# Yazoo & M. V. R. Co. *v.* Mansfield.

(Division A.   May 18, 1931.   Suggestion of Error Overruled June 1, 1931.)

[134 So. 577. No. 29351.]

May, Sanders, McLaurin & Byrd, of Jackson, and Chas. N. Burch and H. D. Minor, both of Memphis, Tenn., for appellant.

674

**G. Q. Whitfield** and **Chalmers Potter**, both of Jackson, for appellee.

**McGowen, J.,** delivered the opinion of the court.

In the lower court Mrs. Mansfield recovered a judgment for one thousand dollars against the Yazoo & Mississippi Valley Railroad Company for personal injuries received by her in consequence of a fall from the platform of its caboose parked at the time in its yards at Vicksburg. There is direct appeal here by the railroad company on the question of liability, and cross-appeal by Mrs. Mansfield on the inadequacy of the damages allowed in the court below.

On May 20, 1930, Mrs. Mansfield was in the city of Vicksburg visiting friends, Mr. and Mrs. Donahoe, and in attendance upon the bridge celebration held on that day. She and her friends were driving in a car on the

streets of that city and invited Ellis, a flagman of defendant company, to join them. Later the husband of Mrs. Donahoe was in the car, and about eight o'clock in the evening, at the solicitation of Ellis, they went to the yards of the railroad company for the purpose of inviting Tew, a friend of Ellis, to go upon a pleasure ride out to the bridge. It was dark and Ellis borrowed a lantern from an employee and went to a caboose where Tew was sleeping in order to awaken Tew and have him join the party for a pleasure ride. Tew declined and the party proceeded to drive until about ten-thirty, when they again drove to the yards, and at Ellis' solicitation the entire party proceeded across eight or more railroad tracks to where the caboose was parked in which Tew was sleeping. Mrs. Mansfield and others went upon the rear platform of the caboose where they sought to arouse Tew, and, failing to do so, Ellis was seeking to open the door when Mrs. Mansfield lost her balance and fell from the platform and was seriously and painfully injured. At both ends of the caboose there were platforms which had steps leading up on either side onto the platform, and on the rear there was an iron guardrail three or four feet in height running up to the platform on either side of the steps, and in the center there was a space of a foot and a half or two feet left open which was spanned by a chain fastened from one side of the guardrail to the other. It was the rule of the company that this chain spanning the guardrail should be kept fastened across the gap when not in use by the employees of the company in going from the caboose to cars in the rear. The yards of the railroad company were inclosed by a fence, were unlighted, and the caboose was a distance of a hundred to one hundred and fifty yards from the station. Mrs. Mansfield had never been in the yards of the company at Vicksburg.

It was shown that for years the railroad had tacitly permitted its employees, the crew of the train, to sleep in the caboose if they so desired, and Tew, a flagman, was

so occupying the caboose at the time Mrs. Mansfield was injured. There was an ice box, and ice was provided by the railroad in order that the employees might have cool water. It was shown that they sometimes ate their lunch on the caboose while traveling or when not in motion. The "run" was from Meridian to Vicksburg, and return. These employees lived at Meridian and had what is called in railroad parlance "a lay over" at Vicksburg, usually on the train here in question of which the caboose was a part, from 11 o'clock in the day until 11 o'clock that night. Sometimes some employees slept in the caboose, others had rooms in the city of Vicksburg. Mrs. Mansfield had never been on the caboose nor in the yards of this railroad company at Vicksburg, but testified that she had been on a caboose on one or two occasions at Bogue Chitto and Brookhaven, neither of which towns we know as a matter of common knowledge were on the line of railroad between Vicksburg and Meridian.

There was a conflict in the testimony as to whether Mrs. Mansfield fell through the gap in the guard rail or from the step of the car, but this issue was settled adverse to the railroad by the verdict of the jury.

The court below gave the following instruction on behalf of the plaintiff, which we set out because it reflects the lower court's view of the law of the case: "The court instructs the jury for the plaintiff that if you believe, from a preponderance of the evidence, that the defendant Y. & M. V. R. R. Company permitted its employees for a long period of time to live in and sleep in its caboose between runs, that then under the law it became the duty of the said defendant, to maintain said caboose, and especially the platform thereof, by which entrance into and exit out of said caboose was effected by the occupants thereof, in a reasonably safe condition for any members of the public who might have lawful, business or social, relations with the said occupants thereof, employees of the R. R. Co., permitted by it to so

occupy said caboose, and said practice and permission by said defendant R. R. Co., to its said employees, to so occupy said caboose, constituted, in law, an implied invitation to members of the public who might have lawful business or social, relations with the said employees to come upon the caboose.''

And the court further instructed the jury as follows: ''The court instructs the jury for the plaintiff that a failure of the railroad to fasten the chain across the back of the caboose, when they allowed their employees to sleep thereon, and when they impliedly invited the public to visit such employees would constitute negligence and if you believe from a preponderance of the evidence in this case that at the time of plaintiff's injury, the chain across the back of the defendant's caboose was not up but was negligently permitted to be down, and this was the proximate cause of plaintiff's injury, your verdict should be for the plaintiff.''

The defendant requested and was refused a peremptory instruction.

This case is solvable upon the question of whether or not there was an implied invitation on the part of the railroad company to the public to visit this caboose as situated in its yards at Vicksburg. The implied invitation must be deduced from the fact that the railroad company had allowed its employees, the crew of the train, to sleep in the caboose at Vicksburg during the interim between their arrival at Vicksburg and the time they began the return trip of their train.

It is not contended by this record that Mrs. Mansfield had any business to transact with Tew, the occupant of the caboose, or that she was engaged in any other but her own social pleasure in seeking to arouse Tew in order that he might accompany her and her companions on a pleasure drive. It is not shown that the caboose in question while parked in the yards was used by the railroad directly or indirectly for any business purpose in which the public was invited to participate. It is not contended

that there was any express invitation on this occasion on the part of the railroad company.

Counsel for the appellee plant their case upon the authority mainly of the case of Owens v. Yazoo & M. V. R. Co., 94 Miss. 378, 47 So. 518, 136 Am. St. Rep. 579, from our own court, and the case of Southern R. Co. v. Bates, 194 Ala. 78, 69 So. 131, L. R. A. 1916A, 510. The facts and the law of the Owens Case are stated in the syllabi, which we set out here:

"The question of liability of a railroad company for negligence to a member of the family of its foreman of an extra gang who lived with him in his camp cars, to its knowledge, and as it was and had been permitting the families of such a foreman to do, is not affected by a rule forbidding this adopted by it, but not known of by any member of the family.

"A railroad company which allowed the family of its foreman of an extra gang to live with him in his camp cars owed to the members of the family ordinary care, something more than to a mere licensee not to wilfully injure him.

"Whether a railroad company used the ordinary care which it owed to the members of the family of its foreman, who with its knowledge and consent, and in accordance with its custom, lived with him in his camp cars, is a question for the jury, the plank walk between the doors of the two cars being only twelve to fourteen inches wide, while ordinarily those furnished were thirty to thirty-six inches wide, and the car having, the night before the foreman's daughter was injured by the tilting of the plank while she was crossing it, been put by the company where one rail of the track was higher than the other, and the roadbed was not ballasted."

It will be observed that the family of the foreman was in a camp car, and that a defective plank or crossing was provided by the railroad company from the camp car to the dining car. Plaintiff stepped upon the plank while undertaking to go from the camp or sleeping car

to the dining or "eating" car. The plank slipped, plaintiff fell and was injured. The camp car was adapted, according to that record, to family use. It was the custom of the railroad company to provide a car for that purpose. The railroad company also provided the car in which the employees ate. Because of the defective plank and its changed position during the night the child fell and was injured. It cannot be said that a dining car to a child of tender years would not be alluring and enticing. We think the facts of the Owens case are so entirely dissimilar from the case at bar as to need no comment from us. In that case Chief Justice Whitfield held that the injured child was more than a mere licensee, and that the railroad company owed a higher duty than that of licensee to the child. There was owing to the members of the family, occupying the car provided by the railroad company for that purpose, ordinary care to see that they were not injured. The implied invitation in the Owens Case is apparent as compared to this case; the allure is present in the Owens Case, and in that case the Chief Justice said that the case was very delicately balanced upon its facts, and therefore a careful statement of the case was made.

In the Owens Case the court further said: "Undoubtedly she was not a trespasser in any sense. She was where she was with the full knowledge and consent of this company, in accordance with its usage and custom, and, being where she was with such full knowledge and consent on the part of the company itself, the company owed to her the nondelegable duty of the master to furnish a safe place to live, amongst other things being involved, a safe platform to pass from car to car, and it also owed her the duty of ordinary care."

In the Bates Case, supra, the railroad company had provided a platform as a part of its depot facilities used as the place of the public buying and shipping cotton, and cotton bought at that platform was shipped over the railroad of the company. Lindsey was a cotton buyer,

Bates desired to speak with Lindsey, but not about the cotton business, on business of his own with Lindsey, and went upon the platform to speak with Lindsey, which he had to do or else Lindsey would have to leave the platform in order to transact his business with Bates. The court said that the interest of the railroad company was subserved by noninterference with shipments of cotton over its line. In other words, the cotton business continued while Bates spoke with Lindsey. In that case Bates fell from the steps which were defective and was injured. The platform was a part of the depot facilities, was built for the cotton dealing business, and, although Bates did not have direct interest in the cotton business, his interest in going upon the platform to see Lindsey, who was engaged in the cotton business, was so closely allied to that of the railroad company that the court there held that there was mutuality of interest as between the railroad company and Bates.

The facts make the case, and the facts of that case are in a marked degree distinguished from the facts of the case at bar. Mrs. Mansfield was pleasure bent. As to whether or not she took Tew for a drive when he was off duty and not engaged in the business of the master was no sort of concern to the master. There was in this case no mutuality of interest. The Owens Case perhaps went to the border line of the limit under which the master could be held liable, but if we were to announce liability in this case we would extend the rule beyond anything conceived in any case to which we have had recourse, and we have examined many besides those cited and relied upon by counsel for appellee. An examination of many authorities convinces us that, in order to imply an invitation on the part of the owner of the premises, the owner must in some way hold out some kind of allurement, and there must be some kind of adaptability of the premises to the purposes of the visitor thereon. Here, in the instant case, we have a caboose

liable to be pressed into service by the railroad company at any moment, inclosed within its own yards, maintained at night in an unlighted condition, amongst many railroad tracks provided for parking cabooses, freight cars, and transacting the transportation business of the company. It would appear that the railroad company had done all it could in this case not to allure or entice any one to go upon these many tracks where the business of moving cars, freight and passenger, was to be transacted, one hundred or one hundred and fifty yards from the station. Mrs. Mansfield was a mere volunteer when she went upon the track for her own pleasure, whether wise or unwise it is not for us to say. Of course, if she was a mere volunteer, or at best a mere licensee, the railroad company owed her no duty save not to wilfully injure her. It certainly owed her no duty with reference to the fastening of the chain across the gap in the guard rail of the platform of the caboose. She went upon the premises for her own social pleasure by tacit permission only, without any enticement, allurement, or inducement being held out to her by the situation which the railroad company there created, and she cannot recover damages for the injuries caused to her because the chain did not span the gap at the moment she received her injuries.

In the case of Robertson v. Yazoo & M. V. R. Co., 152 Miss. 333, 118 So. 181, 183, we said that "invitation is inferred where there is some common interest or mutual advantage, while license is inferred where the object is mere pleasure or benefit to the person using it." Instances of implied invitation may be found in the cases of Yazoo & Miss. Valley R. Co. v. Cox, 132 Miss. 564, 97 So. 7, and Allen v. Yazoo & M. V. R. Co., 111 Miss. 267, 71 So. 386. The case of Illinois Central R. Co. v. Ornola, 78 Miss. 788, 29 So. 768, 84 Am. St. Rep. 645, is a case in point in the instant case, although differing in its facts. The principle announced there is applicable here.

Mrs. Mansfield went upon the premises of the railroad company and into its yards and onto its caboose as a volunteer subject to the concomitant risks and perils, and no duty was imposed upon the railroad company.

The fact that her companion visited a caboose on one occasion, and she on this occasion, did not tend to establish a custom binding upon the appellant. Aristotle once said, "One swallow maketh not a spring, nor a woodcock a winter."

There are no facts in this case from which the jury was authorized to infer that appellee was an invitee. The peremptory instruction requested by the railroad company should have been granted.

Reversed, and judgment here for the appellant.