BERTHA FALK AND THEODORE FALK, PLAINTIFFS-RE-SPONDENTS, v. STANLEY FABIAN CORPORATION OF DELAWARE, DEFENDANT-APPELLANT.

Submitted February 15, 1935—Decided May 17, 1935.

For the plaintiffs-respondents, *John W. McGeehan, Jr.*

For the defendant-appellant, *Joseph Coult* and *John J. Francis.*

The opinion of the court was delivered by

CASE, J. This is an appeal from a judgment of the Supreme Court affirming a judgment entered in the Essex County Court of Common Pleas on a jury award of $1,500 to Mrs. Bertha Falk for personal injuries and of $500 to her husband, Theodore Falk, for his consequential damages. Mrs. Falk was injured in a fall at the defendant's moving picture theatre in Irvington. The points made are that the trial court erred in denying defendant's motions for a non-

suit and for a directed verdict. It is urged in opposition that there was proof of negligence sufficient to go to the jury on two grounds, inadequate lighting and a loosened carpet.

Mrs. Falk occupied a seat upon what is called a balcony but was really an ascending incline at the rear of the orchestra floor, served by steps that rose from the main floor level and opened out into the several rows of seats. The arrangement was similar to a section of an amphitheatre. The steps were carpeted. When Mrs. Falk arose to leave she walked past the intervening seats to the neighboring step and tripped at or near the edge of the carpet. There was no direct lighting upon the steps at that point. A small recessed light on a lower step did not reflect upwards.

The general rule is stated in *Andre* v. *Mertens,* 88 *N. J. L.* 626, as follows: "The proprietor of a theatre conducted for reward or profit, to which the general public are invited to attend performances, must use ordinary care to make the premises as reasonably safe as is consistent with the practical operation of the theatre, and if he fails in this duty he may be held liable for personal injuries occasioned thereby; and this rule applies to the proprietor of a moving picture show." The burden of proving negligence is, of course, upon the plaintiffs (*Cella* v. *Roth,* 113 *Id.* 458; *McCombe* v. *Public Service Railway Co.,* 95 *Id.* 187), and the first question is whether the plaintiffs have shown that the defendant did not exercise ordinary care, in the matter of lighting, to make the premises as reasonably safe as was consistent with the practical operation thereof for the exhibition of moving pictures.

A moving picture house necessarily operates in partial darkness. With a flood of diffused light there would be no picture. On the other hand, if there were absolute darkness, entrance and exit of patrons during the showing of a picture would be practically impossible. There is a wide range between these two conditions. To provide too much light is to spoil the entertainment for the patron. To provide too little is to impede or make dangerous his coming and going. Where is the line that marks ordinary care? Is it to be

determined in each specific instance as an isolated fact without regard to standard equipment or prevailing practice? We think not. Grave difficulties would attend such a course, for it appears that the degree of illumination must be something of a compromise between two opposing objectives—successful showing of the picture, which calls for darkness, and the safety of those for whom the entertainment is provided, which calls for light. The misadventures that may befall persons moving about in a darkened room are legion, both in number and in variety of incident. It has been held that a moving picture operator violates no duty to a patron if, while a picture is being shown, the condition of light is that ordinarily used in exhibiting moving pictures to enable the audience to get a reasonably clear view of the image thrown on the screen. *Rosston* v. *Sullivan* (*Mass.*), 179 *N. E. Rep.* 173. We understand that to be the law. Also, in our opinion, the person who sues upon the ground that the condition of light was not equal to that ordinarily used for such purposes should submit some proof of the ordinary usage, thus manifesting the deficiency. To hold otherwise would vary the result with each case and subject a moving picture operator to the danger of being found guilty of negligence no matter what plan of lighting he adopted. This rule has been applied to certain railroad operations in a line of cases headed by *Feil* v. *West Jersey and Seashore Railroad Co.*, 77 *N. J. L.* 502, and *Traphagen* v. *Erie Railroad Co.*, 73 *Id.* 759, and restated so recently as *Seckler* v. *Pennsylvania Railroad Co.*, 113 *Id.* 299. It was applied to bridge construction in *Halm* v. *Freeholders of Hudson*, 78 *Id.* 712, and to the formulation of rules for the safety of factory employes in *Zebrowski* v. *Warner Sugar Refining Co.*, 83 *Id.* 558. It was stated with respect to the liability of an electric power company in *Heyer* v. *Jersey Central Power, &c., Co.*, 106 *Id.* 211.

Plaintiffs failed to prove any departure in the defendant's lighting equipment from the usage in other moving picture houses. They did not prove the standard or the ordinary and so, of course, did not prove any variation therefrom. We find no proof which under this rule would justify a jury

in determining that the defendant did not use ordinary care in lighting the theatre.

If a moving picture house has assumed to do, and therefore holds itself forth as doing, a specific act by way of protecting its patrons, it must do what it assumes to do or answer for damages that follow from its failure. That recognized legal principle (*LaBrasca* v. *Hinchman,* 81 *N. J. L.* 367), was applied in *Andre* v. *Mertens, supra,* where the proprietor had assumed to provide lights for a stairway and had failed to provide them on a particular occasion. But the failure to perform, or the negligent performance of, an assumed duty is quite another thing from omitting to do something which one has not assumed to do. *Casavalo* v. *D'Auria,* 12 *N. J. Mis. R.* 81; *affirmed,* 113 *N. J. L.* 328. It is said that the present defendant in installing the above mentioned floor light in the stairway assumed to light the steps and thereafter failed in that undertaking. That conclusion starts with a false premise. The defendant did not undertake to light the steps beyond the installation of the light which was functioning properly at the time of the accident. The stated rule does not apply.

*Heine* v. *Acme Theatre Co.,* 5 *N. J. Mis. R.* 164; *affirmed,* 104 *N. J. L.* 171, and *Dondero* v. *Tenant Motion Picture Co.,* 94 *Id.* 483, cited by respondent, do not, we think, essentially touch the point under consideration. We are now concerned, not with the maintenance of a pitfall, a concealed platform or other hindrance to safe passage, but with the sufficiency of the lighting system.

Further, Mrs. Falk is not in position to hold the defendant upon the single ground of inadequate lighting. She knew that she ascended steps to reach her seat and therefore must descend steps to leave. She had been there for two and one-half hours and knew the extent of the darkness. Instead of waiting for the round of pictures to end she undertook, unattended by an usher and without any apparent urge except the wish to go, to leave in a darkened house. She had the right to do that but, in so doing, she assumed the risks that were due solely to the degree of darkness that then pre-

vailed and that was the same as when she entered. Patrons of places of amusement assume the risk or dangers normally attendant thereon. *Thurber* v. *Skouras Theatres Corp.*, 112 *N. J. L.* 385.

The only other ground of liability sought to be fastened upon the defendant is the condition of the carpeting at the place of plaintiff's fall. It is argued that the proofs indicate a defective condition of such a character that the defendant must be held to prior constructive notice thereof. The proofs are very slender and depend partly upon a photograph of the carpet made about two years after the accident, the carpet having been in full use during the *interim*. We think it is doubtful whether the state of the record will sustain a factual finding of even constructive notice to the defendant. *Schnatterer* v. *Bamberger & Co.*, 81 *N. J. L.* 558; *Rom* v. *Huber,* 93 *Id.* 360; 94 *Id.* 258. We are further constrained by the fact that the trial court seems to have tried the case upon the assumption that the alleged defect in the carpet was not an issue. He clearly so charged the jury. In our view the record will not permit the judgment to be saved on that ground.

We conclude that the defendant's motion for direction of verdict should have been granted. The judgment below will be reversed to the end that a *venire de novo* issue.

*For affirmance*—HEHER, VAN BUSKIRK, JJ. 2.

*For reversal*—THE CHANCELLOR, LLOYD, CASE, DONGES, PERSKIE, KAYS, HETFIELD, DEAR, WELLS, JJ. 9.