BERGSTRESSER, Respondent, v. MINNESOTA
AMUSEMENT CO., Appellant

(5 N. W.2d 49.)

(File No. 8508. Opinion filed August 5, 1942.)

Rehearing. Denied December 12, 1942

580

**Davenport and Evans,** of Sioux Falls, for appellant.

**B. O. Stordahl** and **R. G. May,** both of Sioux Falls, for Respondent.

WARREN, J. Plaintiff brought this action against the defendant who owns and operates a moving picture theater in the City of Sioux Falls to recover damages for personal injuries she alleges to have sustained, while leaving the defendant's theater, from a fall as she stepped down into the aisle from the back row where she had sat during a theatrical performance. She moved some seven or eight seats toward the center aisle without hindrance as there was no one occupying the seats. In stepping down into the center aisle she slipped, fell down, landing on her left side. She charges that the defendant was negligent in failing to have its theater premises properly lighted and in failing to maintain the floor and aisle of its said theater in a safe condition for the use of plaintiff as a paid patron of said theater. The defendant denied the acts of negligence and contends that the plaintiff was injured through her own negligence. The trial resulted in a verdict and judgment for the plaintiff. The defendant has perfected an appeal to this court from this judgment and the whole thereof.

Appellant urges that the motion for directed verdict should have been granted and that after the receipt of the verdict by the court, the court should have sustained its motion for a judgment notwithstanding the verdict. In support of the non-liability of the appellant it contends that it did not insure the safety of its patrons and that it was only chargeable with reasonable care in the maintenance for the safety of its patrons; that the step from the aisle to the platform where the back row of seats were situated did not constitute a structural defect. It further contends that the true test as to adequacy of the lighting was whether it conformed to practices in moving picture houses generally; that there was no substantial evidence contradicting the positive evidence that the aisle and other lights were on at approximately the time of the accident and that even if the aisle lights were not on at the precise moment of the accident, there is nothing to show that the defendant was re-

sponsible to refute the positive evidence that reasonable care was used to maintain a proper lighting system.

It would appear from the record before us that appellant's contention carries great merit as the evidence does not seem to support the verdict and the judgment.

A review of the evidence indicates the following important facts: Appellant's theater measures sixty-three feet by seventy-five feet. The interior consists of a main floor and a balcony. The entrance leads in from Phillips Avenue. There are two sections of seats on the main floor divided by a center aisle which is forty-seven inches wide covered by a carpet forty-three and one-half inches wide, leaving a small uncovered portion next to the seats. The space between the front legs of the back row of seats to back legs of the row immediately in front is twenty-three inches. The height of the step at the point adjoining the space between the last row of seats and the next row ahead is three and one-half inches at the front and six and one-half inches at the rear. The lighting equipment on the main floor of this theater consists of 6-watt lights with amber and yellow bulbs. There is one such light on each side of the center aisle at the rear and toward the floor. The beam reflects downward toward the center of the aisle and toward the front of the theater. There is also a smaller light at each side of the theater. On the ceiling at the rear there are eleven lights, one row of six lights being directly above the last row of seats and one row of five lights in the foyer on the ceiling at the rear. There are also two wall bracket lights at the rear and two on the side and six exit lights.

The testimony indicates that the lights are comparable to the lights used by theaters of the same class and type and are the best adaptable to furnish the right balance of light between conflicting necessities which are so patrons can see to move about, so it is dark enough to see the picture and with the lights soft enough to avoid eyestrain. There is evidence to the effect that appellants kept a constant vigilance to maintain this lighting system up to the standard by having employees make frequent inspections.

Respondent arrived at the theater at 2:30 p. m. She

entered through the center door, crowded past two men who were occupying the end seats of the last row, taking a seat in the back row seven or eight seats in and to the right of the center aisle; that while walking out she took hold of the back seat and all of a sudden her left heel slipped down and threw her; that the left heel had caught on the edge of the step and she fell down on her left side. She testified that she did not notice any lights. Later she stated that there were no lights, also that it was "awfully dark." On cross-examination she stated "there were no lights, not a single light in the whole theater." She testified that there were no lights on when she entered the theater. As to the degree of visibility at the point where she fell, she testified that sitting in the middle of the aisle she could see the step at the edge of the aisle and she could see it distinctly. She admitted on cross-examination that for many years she had rather constantly attended the moving picture theaters and was familiar with the fact that such theaters are always dark when pictures are shown and that this theater was no darker than others she had attended. She had not attended this theater for three or more years but in previous years she had gone there from time to time. Her best recollection was that she had attended six times altogether and that she had always occupied a seat in the rear row. The evidence shows that on previous attendance the structural condition at this place in the theater was identical with that of the time of the accident, the step being there all the time. She testified that she could tell when she got to the rear row of seats by saying, "Oh well you can tell the seats it isn't that dark."

A witness for the respondent testified that she occupied one of the rear seats to the left of the center aisle, that it was "semi-dark, quite dark" at the time and that she saw respondent fall. She was asked: "Do you know whether these lights in the aisle were on? A. No, I don't." She testified that looking out of the corner of her eye she could see the respondent approaching from across the aisle and distinctly saw her fall. There is evidence in the record that the lights were on some three or four minutes after the accident.

The respondent was sixty-eight years old, her eyesight was such that while she had worn glasses for a number of years she could knit and crochet and drive an automobile.

Appellant argues that it is not an insurer of the safety of its patrons and its duty was simply to use reasonable care to maintain conditions of reasonable safety, taking into consideration the nature and necessities of the business.

■ An examination of the authorities indicates that the rule of law establishing the degree of care of a manager or proprietor of a theater to be that of ordinary or reasonable care. The authorities are not unanimous on this point but the weight of authorities seem to indicate that the degree of care required of proprietors or managers of a theater for the safety of its patrons is ordinary and reasonable care. Rosston v. Sullivan, 278 Mass. 31, 179 N. E. 173; Peck v. Yale Amusement Co., Mo. Sup., 195 S. W. 1033; Jennings v. Tompkins, 180 Mass. 302, 62 N. E. 265; Dire v. Balaban & Katz, Inc., 241 Ill. App. 199; Stokes v. Commerce Realty Co., Tex. Civ. App., 25 S. W.2d 186; Falk v. Stanley Fabian Corp. of Delaware, 115 N. J. L. 141, 178 A. 740; Hunker v. Warner Bros. Theatres, 115 W. Va. 641, 177 S. E. 629; Richard-Lightman Theatre Corp. v. Vick, 201 Ark. 1001, 147 S. W.2d 731; Klish v. Alaskan Amusement Co., 153 Kan. 93, 109 P.2d 75; Rynn v. Fox-New England Theatres, Inc., 299 Mass. 258, 12 N. E.2d 728; Young. et al. v. Ross et al., 127 N. J. L. 211, 21 A.2d 762; Johnson v. Amphitheatre Corp., 206 Minn. 282, 288 N. W. 386; Miller v. Poli's New England Theatres, Inc., 125 Conn. 610, 7 A.2d 845; Worcester v. Theatrical Enterprises Corp., 28 Cal. App.2d 116, 82 P.2d 68; Coakley v. Dairy Cattle Congress et al., 228 Iowa 1130, 293 N. W. 457; Welcek et al v. Saenger Theatres Corp. et al., La. App., 5 So.2d 577; Greenfield v. Joseph P. Day, Inc., N. Y. Sup., 33 N. Y. S.2d 91; Interstate Circuit, Inc., v. Le Normand et al., 5 Cir., 100 F.2d 160; Hardman v. Stanley Co. of America et al., 125 Pa. Super. 41, 189 A. 886. See, also, Tulsa Entertainment Co. v. Greenlees, 85 Okl. 113, 205 P. 179, 22 A. L. R. 607; Frye v. Omaha & C. B. Street R. Co., 106 Neb. 333, 183 N. W. 567, 22 A. L. R. 610; Emmons v.

Virginia, 152 Minn. 295, 188 N. W. 561, 29 A. L. R. 863; Demarest v. Palisades Realty & A. Co., 101 N. J. L. 66, 127 A. 536, 38 A. L. R. 357; Carlin v. Smith, 148 Md. 524, 130 A. 340, 44 A. L. R. 203; 53 A. L. R. 863; Waddel's Admr. v. Brashear, 257 Ky. 390, 78 S. W.2d 31, 98 A. L. R. 553.

In Rosston v. Sullivan, supra [278 Mass. 31, 179 N. E. 174], the court in discussing the duties of a theater operator owed to a patron said, and we quote:

"The defendant owed to the plaintiff as an invitee the general duty to use ordinary care and diligence to put and keep his theatre in a reasonably safe condition, having regard to the construction of the place, character of the entertainment given and the customary conduct of persons attending. [Citations omitted.] The invitation extended to the plaintiff was to make use of the defendant's theatre to see a moving picture exhibition. Uncontradicted evidence was introduced tending to prove that for this kind of an exhibition a condition of semi-darkness is required and that the amount of light while the pictures were being shown was that ordinarily used in a motion picture house. * * * While pictures were being shown the defendant violated no duty to the plaintiff if the condition of light was that ordinarily used in exhibiting moving pictures to enable the audience to get a reasonably clear view of the image thrown on the screen.

"The evidence would not justify a finding that the theatre and the aisles were then darker than was reasonably necessary for a proper showing of the moving picture."

The Iowa Supreme Court in Coakley v. Dairy Cattle Congress et al., supra [228 Iowa 1130, 293 N. W. 459], in deciding the rule to be imposed on theater proprietors and managers for safety of patrons held as follows: "While a proprietor or manager of a place of public amusement or entertainment is held to a stricter account for injuries to patrons than the owner of private premises generally, the rule is that he is not an insurer of the safety of patrons, but owes to them only what, under the particular circumstances, is ordinary and reasonable care." (Cited authorities omitted.)

In McGregor et ux. v. Saenger-Ehrlich Enterprises, Inc., et al., La. App., 195 So. 624, 627, the court not only touched upon the operator's duty but also upon the presumption of innocence and the burden upon the party charging negligence must show that the duty was violated, and we quote: "It has been held in this state, in fact well settled, as is true elsewhere, that the operator of a theater is not the insurer of the safety of its patrons. Givens v. DeSoto Building Co., 156 La. 377, 100 So. 534. Jones, in his excellent works on Evidence in Civil Cases, Vol. 1, page 29 (4 Ed.), succinctly states the correct rule in tort cases, where negligence is charged as the cause of injury, as follows: 'A familiar presumption, closely related to that of innocence, is embodied in the rule that negligence is not to be presumed, that, on the contrary, the exercise of ordinary care in the premises is to be presumed, and that the party charging negligence must show that the party sought to be charged violated some duty either by act or omission, and thereby caused the injury of which complaint is made. Negligence is not to be presumed from the happening of an accident, or from the suffering of injury by one person at the hands of another, unless the circumstances authorize an application of the doctrine of res ipsa loquitur'."

In Texas Consolidated Theatres, Inc., v. Pittman, 5 Cir., 93 F.2d 21, the rule as expressed is that the care required of an operator of a public theater is the care of an ordinarily prudent person to make the premises reasonably safe for its patrons. The authorities that we have cited when applied to the facts at issue before us seem quite convincing that the appellant used ordinary or reasonable care and diligence to keep its theater in a reasonable safe condition for its patrons and it occupies the same position as did the defendant in Givens v. De Soto Building Co., 156 La. 377, 100 So. 534, 536, and we quote:

"The question therefore is whether it was negligence on the part of the Saenger Company to fail to light the floor at the point where the change of level occurred. We do not think so.

"It is shown that many thousands of persons had en-

tered and left this theatre without another person having suffered a fall. Things were therefore apparently safe.

"Now the operator of a theatre is not an insurer of his patrons. He need only be free from negligence; and, granting that a prudent man must exercise some degree of foresight, nevertheless he is not required to foresee that something may happen, when long experience fails to show any such happening before, unless the circumstances are such that he should have known that the happening was likely even though it had not yet occurred."

■ Appellant presents to the court its defense to the effect that the step from the aisle from the built-up place between the next to the last and last row of seats did not constitute a structural defect. There is evidence in the record that such a step is not unusual in such theaters but on the contrary is quite common. The courts have quite generally recognized the necessities of such conduct in the moving picture business in order that the seats may be so arranged that persons toward the rear of the audience may witness the entertainment from a point of vantage, and it is therefore customary to elevate gradually the level of seats as the rear of the theater is approached. In the building of the floor a step from the aisle up to the floor where patrons will be seated should therefore be anticipated and does not constitute a structural defect.

Of the many authorities contained in our books the following seem helpful in deciding the issues before us:

"She proceeded to the exit indicated where a bright light was located directly in the corridor, and where there was a step down of about seven inches—an ordinary step to the floor of the corridor. She did not notice this step. She testified that the bright light dazzled her as she came out of the darkened room, and as she stepped into the corridor she fell and broke her leg. The plaintiff had never been in the place before, and was not acquainted with the arrangement thereof.

"It is argued by the appellant that it was negligence to maintain the step at that place, and also negligence to direct

the plaintiff to depart by a way other than the way by which she had entered. There is no merit in these contentions. It is no doubt the rule that an owner of a place of public entertainment is charged with the duty to maintain a reasonably safe place for his patrons. 38 Cyc. 268. The mere fact that a step up or one down, or a flight of steps up or down, is maintained at the entrance or exit is no evidence of negligence, especially if the step is in good repair and in plain view." Mary L. Hollenbaek v. J. H. Clemmer, 66 Wash. 565, 119 P. 1114, 37 L. R. A., N. S., 698, 699.

"There cannot be any doubt that one, in passing along the aisle, with the seats rising in tiers along the side of the aisle, must have realized that the aisle was on an incline and that the seats were arranged so as to compensate for the incline; and it having been held in the case cited that the defendant was not guilty of any negligence in having the theater so arranged, and it being necessary to maintain the theater in semidarkness, as stated in the case cited, we do not think that plaintiff should have assumed that the aisle was on the same level as the floor between the tiers of seats, but that, knowing that the aisle was on an incline and that the seats were arranged in tiers, she should have assumed to the contrary; and if she had done so, and proceeded accordingly, the accident would not have occurred." Suggs v. Saenger Theatres, Inc., et al., 15 La. App. 142, 130 So. 817, 818. Texas Consolidated Theatres, Inc., v. Pittman, 5 Cir., 93 F.2d 21; Osborne et al. v. Loew's Houston Co., Tex. Civ. App., 120 S. W.2d 947; Helton v. Northern Amusement Co., 62 Ohio App. 470, 24 N. E.2d 713; Smith v. Penn Federal Corp., 315 Pa. 20, 172 A. 147.

■ The respondent in her amended complaint and by her testimony placed much stress and attempted to show that the theater premises were not properly lighted. Much has been written on problems of theater lighting. Many opinions have discussed the necessary elements as to what constitutes proper lighting in places of amusement and there is a large amount of authority relating to moving picture theater lighting which seems to be rather conflicting. Appellant has sought to lighten our burden by giving various

tests as to the adequacy of lighting. We also find that various courts have spent considerable time in trying to analyze and give their reasons for holding in some cases that the lighting was not the proximate cause of injury and in other cases for their holding that improper lighting was the proximate cause of injury and constituted negligence. It is rather difficult to say what is the proper amount of light required in a moving picture theater. That being true, it would seem rather difficult to charge a jury with the duty to say whether or not the light was sufficient so as to find the defendant negligent or absolve him therefrom. Technicians and experts on lighting seem to have reached a compromise both as to how to light and how much light may be used in order to give the patrons the best protection from injury in moving about the building and also to give clear vision of the picture without too much eyestrain. It would seem that the technicians and experts in lighting have worked out a rule to the effect that there must be semidarkness. Courts also recognize the fact that these lighting rules when applied conform to the lighting of the moving picture houses, that there is no breach of duty of the proprietor or manager. Rosston v. Sullivan, 278 Mass. 31, 179 N. E. 173; Givens v. De Soto Building Co., 156 La. 377, 100 So. 534; Falk et al., v. Stanley Fabian Corp. of Delaware, 115 N.J.L. 141, 178 A. 740; Johnson v. Mathews-Moran Amusement Co., Inc., 164 Or. 636, 102 P.2d 703; Cooke et ux. v. Loew's Houston Co., Tex. Civ. App., 130 S. W.2d 869; Rissell v. Lycoming Amusement Co., 138 Pa. Super. 404, 10 A.2d 908; Richard-Lightman Theatre Corporation v. Vick, 201 Ark. 1001, 147 S. W.2d 731.

In Johnson v. Mathews-Moran Amusement Co., Inc., supra [164 Or. 636, 102 P.2d 705], the court said and we quote:

"We fail to see wherein defendant was negligent in failing to provide reasonable light. There is no evidence that the lighting of the theatre was not in keeping with the standard ordinarily maintained by those engaged in the same business. Does the mere fact that plaintiff was unable to clearly see the second step speak of negligence?

Perry v. Loew's Boston T. Co., 291 Mass. 332, 197 N. E. 54. The 10-watt light at each seat end was, according to the undisputed evidence, stronger than those commonly used in theatres. The evidence, without contradiction, is that standard lighting equipment was used by the defendant. Counsel for plaintiff suggests that the light may have been covered with dirt or dust ,or that it may have been an old light, but the evidence warrants no such inference. We are not permitted to indulge in such speculation.

"This was a small theatre, having a seating capacity for 800 people.. We agree with respondent that, while the theatre is in darkness, the operator thereof must exercise reasonable care to see that patrons reach their seats in safety. The usher with the flashlight is an important safety factor. The defendant, however, was not, under the law, required to furnish an usher for every patron. Neither can a patron reasonably expect instant service on the part of the usher."

In Richard - Lightman Theatre Corporation v. Vick, supra [201 Ark. 1001, 147 S. W.2d 732], the court said: "We think the principle many times stated but recently re-announced in Kroger Grocery & Baking Co. v. Dempsey, Oct. 14, 1940, [201 Ark. 71], 143 S. W.2d 564, is controlling here, and that is that before appellant can be held for failure of the aisle lights to be burning when appellee left the theatre, she must show actual knowledge of appellant of such condition or that the condition existed for such a length of time as that knowledge will be presumed."

In Rissell v. Lycoming Amusement Co., supra [138 Pa. Super. 404, 10 A.2d 910], the court held: " '* * * When darkness prevailed, the plaintiff should not have heedlessly entered the aisle of the balcony where the front part.is lower than the rear. She should have reasonably anticipated that steps were a necessary part of such a construction and that the floor would not continue on the same level as where she entered the aisle. She knew that she could not see where she was walking and common prudence should have dictated that it was unsafe for her to proceed.' "

■ From an examination of the evidence, we believe it appears that the lighting was of the required standard,

that standard ordinarily maintained by those engaged in the same business.

"A moving picture house necessarily operates in partial darkness. With a flood of diffused light, there would be no picture. On the other hand, if there were absolute darkness, entrance and exit of patrons during the showing of a picture would be practically impossible. There is a wide range between these two conditions. To provide too much light is to spoil the entertainment for the patron. To provide too little is to impede or make dangerous his coming and going. Where is the line that marks ordinary care? Is it to be determined in each specific instance as an isolated fact without regard to standard equipment or prevailing practice? We think not. Grave difficulties would attend such a course, for it appears that the degree of illumination must be something of a compromise between two opposing objectives— successful showing of the picture, which calls for darkness, and the safety of those for whom the entertainment is provided, which calls for light. The misadventures that may befall persons moving about in a darkened room are legion, both in number and in variety of incident. It has been held that a moving picture operator violates no duty to a patron if, while the picture is being shown, the condition of light is that ordinarily used in exhibiting moving pictures to enable the audience to get a reasonably clear view of the image thrown on the screen. Rosston v. Sullivan, 278 Mass. 31, 179 N. E. 173. We understand that to be the law. Also, in our opinion, the person who sues upon the ground that the condition of light was not equal to that ordinarily used for such purposes should submit some proof of the ordinary usage, thus manifesting the deficiency. To hold otherwise would vary the result with each case and subject a moving picture operator to the danger of being found guilty of negligence no matter what plan of lighting he adopted." Falk et al. v. Stanley Fabian Corp. of Delaware, 115 N. J. L. 141, 178 A. 740, 741.

■ We strongly stress that the facts before us when viewed in the light of the able authorities show that there was not sufficient evidence to raise an issue of negligence

for submission to the jury. Many of the authorities that we have cited so hold and the authorities that we are about to cite indicate what is regarded as sufficient lights in a moving picture theater. Space forbids quoting and we will therefore simply cite the following: Thorne v. Chicago Orpheum Co., 306 Ill. App. 276, 28 N. E.2d 350; Weiner v. Egleston Amusement Co., 293 Mass. 83, 199 N. E. 306; Nabson et al. v. Mordall Realty Corporation, 257 App. Div. 659, 15 N.Y.S. 2d 38; Redic v. East Texas Theatres, Inc., et al., Tex. Civ. App., 158 S. W.2d 593; Jefferson Amusement Co. v. Eaves et al., Tex. Civ. App., 137 S. W. 104; Torbet v. F. W. Woolworth Co., 59 S. D. 47, 238 N. W. 140.

■ Under the established rules we conclude that the testimony and the circumstances were such that the motion for a directed verdict should have prevailed. The judgment appealed from is reversed, with directions to enter judgment in favor of appellant pursuant to the motion for a judgment n.o.v.

POLLEY and SMITH, JJ., concur.

ROBERTS, J., and RUDOLPH, P.J., concur in result.