PARAMOUNT RICHARDS THEATRES, INC., *v.* JOHNSON.

(In Banc. March 11, 1946.)

[25 So. (2d) 129. No. 36045.]

Heidelberg & Roberts, of Hattiesburg, for appellant.

Homer W. Pittman, of Hattiesburg, for appellee.

648

Argued orally by **M. M. Roberts**, for appellant, and by **Homer W. Pittman**, for appellee.

**Griffith, J.,** delivered the opinion of the Court.

Appellant operates the Lomo Theatre, a moving picture house in the City of Hattiesburg. There are five moving picture theatres in that city, one being a large and expensive place called the Saenger, and the other four, including the Lomo, are designated in the record as the small theatres. Appellee recovered judgment against appellant for personal injuries which she says she sustained in a fall in the aisle of the Lomo Theatre, caused by her stumbling over the foot of a patron protruding into

the aisle, and she grounds her right of action upon (1) the failure of appellant to furnish an usher; and (2) the want of a sufficient light in the theatre to see obstacles in the aisles.

(1) There seems to be no serious dispute that ushers were on duty. The rule is that a theatre, such as this, is not required to furnish an usher for each patron and he cannot expect instant service on the part of an usher, but if such attendance is desired the patron must wait a reasonable time for such services to be made available. Johnson v. Mathews-Moran Amusement Company, 164 Or. 636, 102 P. (2d) 703, and compare Osborne v. Loew's Houston Company (Tex. Civ. App.), 120 S. W. (2d) 947. Appellee does not assert that she waited for an usher, but says that she failed to see one and thereupon started on down the aisle. It was not asserted that the theatre had any knowledge of the foot in the aisle or that it had been there long enough to charge the theatre with notice.

(2) It is a matter of common knowledge that the auditorium of a moving picture theatre must, during the exhibition, be in semi-darkness, and dark enough that the pictures may be viewed in clear perspective without unreasonable eyestrain. Many patrons prefer an auditorium for such exhibitions which is almost entirely dark, while others insist upon sufficient light that they may see who else is in attendance. The problems of eyestrain depend to a large extent upon technical knowledge and experience, and little is gained from individual preferences in that respect. Much depends also upon the size of the auditorium and particularly as to the height of its ceiling, and there are still other considerations.

In view of all this, the courts have not found it practical to attempt to lay down a rule based upon particular specifications as to what amount of darkness is required for the primary purpose of best exhibiting the picture, and what residuum therefrom is to be kept to enable patrons to make their way into the auditorium or to leave it or to move about therein when necessary. By

the weight of authority, the courts have adopted the rule that it is the duty of the exhibitor as respects this problem of lighting to conform in a fair and reasonable measure to the standards ordinarily and generally maintained by those engaged in that business. A recent review of the authorities is found in Bergstresser v. Minnesota Amusement Company, 68 S. D. 579, 5 N. W. (2d) 49, 143 A. L. R. 53, and see the elaborate annotations in the volume last cited.

We adopt that rule for moving picture theatres as we have already done, as to situations within similar reason, in Daniel v. Jackson Infirmary, 173 Miss. 832, 163 So. 447, 448, wherein we said: "It is the more dependable from the standpoints both of practicability and of justice to look to the customary generally recognized and commonly observed standards in any non-established line of business or occupation, when that business or occupation has many members, and to the sanctions of tried experience in such business or occupation for guidance as to what is adequate and proper therein rather than to elevate, above the sanctions of such long-tried and general experience, the notions or preferences of a particular jury, many of whose members have had no experience whatever in that business and sometimes with little or no opportunity for particular observation of it, save only that the courts and juries shall possess the reserved right to overrule any such customary standards of any business when the standards adopted and observed by that business are nevertheless so unreasonably unsafe, and so obviously so, that impartial persons could not well be in disagreement upon the issue, and, as we have already stated, such is the rule of law in this state."

The reason for the adoption of that rule, as applicable here and as is manifest upon its statement, is to avail of the combined aid of technicians and experts on lighting and of the lessons of experience over many years, and in a business which has many members and which extends over a large area or territory serving all classes

of people, and that when finding what is the customary, generally recognized and commonly observed standards, to require adherence to that standard as a rule of conduct. A customary standard under a rule of that character must have a greater or less territorial extent according to the reasons which make the reference to it pertinent, and thus the question here presented is not to be answered by the course which may happen to be observed in any one community or in any one theatre, but in a sizeable area or a considerable section of the country. As quoted by Judge McGowen in Yazoo & M. V. Railroad Company v. Mansfield, 160 Miss. 672, 684, 134 So. 577, 580, "One swallow maketh not a spring nor a woodcock a winter."

In a business where there are thousands of members everywhere, none would contend that the practice observed by one community where there are only five members should be allowed to set the standards for all the surrounding area or region, from which it follows that the methods pursued by one or more of the five members of a single community is not allowable as the yardstick for an obligatory rule of conduct of any one of them. To summarize, the reference of the rule is to a generally recognized standard throughout a wide adjacent territory and to establishments of a similar size and character in that territory.

The case in behalf of plaintiff was attempted to be made out by an unfavorable comparison of the lighting of the theatre in question with that maintained in the large and expensive theatre called the Saenger, but obviously this is not within the stated rule. A few other witnesses made unfavorable comparison of the Lomo with three others in Hattiesburg, but the greater number of the witnesses said that the Lomo compared favorably with all the others except the Saenger and several of them included the Saenger. As we have already said, however, inquiries confined to four or five theatres in one town or community is not within the rule as to what

is the customary standard maintained and observed in that business generally, which necessarily must include an area or section broad enough to come within the reasons which give the rule its existence. It must include many members, not merely a few.

On the other hand, every witness who was called on to make any comparison of this theatre as respects its lighting with others within the general area or section of the county testified that the Lomo compared well and favorably with the average of the smaller theatres in this and adjoining states or areas. Thus, according to the undisputed testimony, this theatre conformed to 'the standards ordinarily maintained by those engaged in that business throughout wide sections of the country, and as to establishments of a similar size and character, and among the witnesses so testifying was an expert on theatre lighting, a member of the International Association of Electrical Inspectors. In addition to which, it was shown that the installation of the lighting system in the Lomo Theatre was supervised by an experienced electrical engineer, his experience and work having extended over many states and cities, and that from that time the system was inspected and approved by men trained in that business.

The peremptory charge requested by appellant should have been granted.

Reversed and judgment here for appellant.