32 N.J. Super. 551 (1954)
108 A.2d 873
RUTH BARNARD, PLAINTIFF-APPELLANT,
v.
TRENTON-NEW BRUNSWICK THEATRES COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, AND FRED G. MacKENZIE AND JOSEPH D. MacKENZIE, PARTNERS, TRADING AS FRED G. MacKENZIE COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 11, 1954.
Decided October 27, 1954.
*553 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Stephen V.R. Strong argued the cause for the appellant (Messrs. Strong & Strong, attorneys).
Mr. Victor C. Hansen argued the cause for the respondent Trenton-New Brunswick Theatres Company (Messrs. Cox & Walburg, attorneys).
Mr. John C. Stockel argued the cause for the respondents Fred G. MacKenzie and Joseph D. MacKenzie, partners, trading as Fred G. MacKenzie Company.
The opinion of the court was delivered by FRANCIS, J.A.D.
The plaintiff's personal injury action was dismissed as to all defendants on motion at the close of her case. She now appeals.
The defendant, Trenton-New Brunswick Theatres Company, owns and operates a moving picture theater at 17 Livingston Avenue, New Brunswick, N.J. Immediately adjoining the public sidewalk is an outer vestibule about 12 feet in length covered with rubber matting. At the end of this vestibule there are six transparent glass doors through which entrance is made to the inner lobby. The dimensions of this interior lobby are not given but the picture introduced in evidence shows it to be a quite sizeable one. It is carpeted from wall to wall. The walls are tiled and judging from the picture contain some posters relating to current or future pictures. On the right side for one entering, a glass windowed *554 box office is located. At the end of this lobby are six solid doors which lead into a portion of the theater where the seats are located and the picture is shown.
The plaintiff, Mrs. Ruth A. Barnard, who was 76 years of age at the time of the accident, January 14, 1953, resided at 116 Livingston Avenue, apparently a short distance from the theater. She had been attending moving picture performances there for many years and had been in the lobby "many, many times." She preferred the afternoon performances over those of the evening. The afternoon shows did not start at the same time; she said that they begin irregularly at 11:55 A.M., 12:00, and sometimes 12:15 P.M.
On January 14, 1953, at about 11:15 or 11:30 A.M., she entered the main or interior lobby through one of the glass doors for the purpose of inquiring as to the time the matinee began that day. Before entering she saw three men in the interior lobby near the solid doors already described, and she thought they might be able to give her the desired information. She knew that the picture was not on at that time.
She walked through the glass door which was open, up to the three men and made the inquiry she had in mind. One of the men answered, saying they were just workmen and were unable to tell her. At this, she turned to her right to leave and her left foot struck a five foot ladder which was lying on the lobby floor and which she had not seen. As a result she fell and suffered the injuries for which the suit was brought. She did not remember whether there were lights on, but it was a bright, sunny day and there was sufficient light from the outside to enable her to see where she was going.
The ladder which caused the fall was owned by the defendants Fred G. MacKenzie and Joseph D. MacKenzie, trading as Fred G. MacKenzie Company. Two workmen of that company were engaged in repairing one of the entrance doors and they had used the ladder in taking down the door. One of these workmen was called as a witness by the plaintiff to prove ownership and use of the ladder. In the course of *555 examination by counsel for the MacKenzies he maintained that they were working on the glass doors and not the solid ones on the inside of the lobby and that the fall occurred on the rubber matting outside the glass doors.
With the proof in this posture, the trial court dismissed the action on the ground that no negligence had been shown on the part of any of the defendants.
The first consideration on this review must relate to the status of the plaintiff on the theater premises at the time of her fall. Was she an invitee or licensee? If a licensee, manifestly she cannot recover against the owner because the record is barren of evidence of willful or wanton injury. In view of the result hereafter stated on the subject of invitation, it is not necessary to consider whether the duty of an independent contractor toward a licensee would be any greater than that of the owner. See Sohn v. Katz, 112 N.J.L. 106, 109 (E. & A. 1933); Freidman v. Snare & Triest Co., 71 N.J.L. 605 (E. & A. 1905); 65 C.J.S., Negligence, § 24n.
The evaluation of the proof must be engaged in with an awareness that all of the facts and the inferences therefrom must be accepted in the most favorable light to the plaintiff. Larocca v. American Chain and Cable Co., 13 N.J. 1 (1953).
Plainly, plaintiff's appearance in the lobby was not in response to an express invitation. But was there an implied invitation?
The test generally applied in deciding the question is whether the entry upon the premises was for a purpose directly or indirectly connected with the business carried on there by the occupier, or was of interest or advantage to the occupier, or was in pursuance of an interest or advantage which is common or mutual to the occupier and to him who enters. Murphy v. Kelly, 15 N.J. 608 (1954); Lewin v. Ohrbach's, Inc., 14 N.J. Super. 193 (App. Div. 1951); Walec v. Jersey State Electric Co., Inc., 125 N.J.L. 90 (Sup. Ct. 1940); Smigielski v. Nowak, 124 N.J.L. 235 (Sup. Ct. 1940); Feingold v. S.S. Kresge Co., 116 N.J.L. 146 (E. & A. 1936); MacDonough v. F.W. Woolworth Co., *556 91 N.J.L. 677 (E. & A. 1918); Nolan v. Bridgeton & Millville Traction Co., 74 N.J.L. 559 (E. & A. 1907); 65 C.J.S., Negligence, § 43(3), pp. 511, 512; 38 Am. Jur., Negligence, § 99. If the proof shows such purpose, an implied invitation has been established.
Our cases, with one exception (Fleckenstein v. Great Atlantic & Pacific Tea Co., 91 N.J.L. 145 (E. & A. 1917)), have taken a liberal view as to the scope of the implied invitation extended by operators of businesses. It has been held to extend to a person who enters "with a vague purpose of buying" if something took her fancy (MacDonough v. F.W. Woolworth Company, supra); to a child entering with his parent who intends to make a purchase for him (Feingold v. S.S. Kresge Co., supra); to a child who accompanies a parent on a mission connected with the business of the occupier but in which the child had no direct interest (Smigielski v. Nowak, supra), or where the interest being served by the presence of the child and parent in the store is that of the family as well as the merchant (Murphy v. Kelly, supra). And it has been broadly stated that the implied invitation includes persons who enter on a business having a potentiality for future profit to the merchant (Lewin v. Ohrbach's, Inc., supra).
Applying these considerations to the facts here, a jury might well find that the plaintiff in going into the theater lobby was serving an end which was reasonably related to the conduct of the theater owner's business.
Although the plaintiff was aware that a performance was not in progress at the time, she knew that the beginning time thereof was not uniform. There is nothing to show the existence of any notice or signs outside the theater or near the entrances indicating the starting time of the performance that day. A reasonable person with the plaintiff's knowledge of the situation might well be interested in ascertaining the time to facilitate her appearance as an intending patron. It was only about a half-hour to some of the starting times mentioned by her. The entrance door ordinarily used by patrons to gain admission was open. Apparently there were *557 advertisements to be viewed in the lobby. She saw other persons there. In the light of all of the circumstances, certainly the minds of reasonable men might differ as to whether she was there for a purpose which would bring her within the scope of an implied invitation.
If plaintiff is found to be an invitee, the theater owner owed her the duty of using reasonable care for her safety; more specifically, the duty was to use ordinary care to keep the lobby reasonably safe for the purposes for which it was intended, at least one of which was as a passageway from the outer vestibule to the area of the performance. Lewin v. Ohrbach's, Inc., supra, 14 N.J. Super. at page 198; Falk v. Stanley Fabian Corp., 115 N.J.L. 141 (E. & A. 1935). And this duty was chargeable to the MacKenzie Company and its employees as well as to the theater owner. Terranella v. Union Bldg. & Const. Co., 3 N.J. 443 (1950).
In our judgment, the presence of the ladder on the floor of this lobby where invitees would be expected to pass, created an inference of negligence which required submission of the question to the jury for determination.
In Finnegan v. Goerke Co., 106 N.J.L. 59 (E. & A. 1929), the plaintiff, a business visitor, was caused to fall by a rattan box resting on the floor in an aisle and flush against the end of the counter she was passing. The Court of Errors and Appeals declared that a jury question existed as to the negligence of the store keeper. It held also that the injured woman was not required to look for such obstructions in the aisle but was entitled to assume that it would be free from them.
In Solomon v. Alps Kandy Shoppe, Inc., 14 N.J. Misc. 178 (Sup. Ct. 1936), the plaintiff fell over the platform of a scale which extended into the exit path from the store and the same ruling was made. Again it was said that the patron might assume that the way was clear.
But who was responsible for the ladder in the lobby, the theater owner, the MacKenzies, or both?
At the trial the theater owner argued that the MacKenzies were independent contractors and that therefore liability *558 could not be imposed on it for the negligent act of their employees. The rule in this regard is stated in Terranella v. Union Bldg. & Const. Co., supra, to be that
"Where the work to be done is not per se a nuisance and injury results from the negligence of an independent contractor or his servants in the execution of it, the contractor alone is liable unless the owner is in default in employing an unskillful or improper person as the contractor." (3 N.J. at page 446).
For a discussion of the significance of the term "nuisance," see Gibilterra v. Rosemawr Homes, Inc., 32 N.J. Super. 315 (App. Div. 1954), decided October 4, 1954.
There is no doubt that the ladder which caused the fall was the property of the MacKenzies and used by their employees during the course of their work. Since it is undisputed that the MacKenzies were independent contractors, and there being no suggestion in the proof that they were known to the theater owner as unskillful or incompetent at the time of employment, or that the theater owner had any knowledge or notice of the presence of the ladder on the floor, it follows that the theater owner could not be held responsible for their employees' negligence.
Accordingly, the judgment is affirmed as to the Trenton-New Brunswick Theatres Company and reversed as to Fred G. MacKenzie and Joseph D. MacKenzie, partners, trading as Fred G. MacKenzie Company.