IDA J. ROSSTON *vs.* JOHN F. SULLIVAN.

Berkshire.     September 15, 1931. — December 29, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Negligence*, Of proprietor of theatre.

The proprietor of a theatre exhibiting moving pictures owes to a patron in the theatre the general duty to use ordinary care and diligence to put and keep his theatre in a reasonably safe condition, having regard to the construction of the place, the character of the entertainment given and the customary conduct of persons attending; but he does not

violate that duty if, while pictures are being shown, the condition of light in the theatre is that ordinarily used in exhibiting moving pictures to enable the audience to get a reasonably clear view of the image thrown on the screen.

At the trial of an action of tort by a woman against a proprietor of such a theatre to recover for personal injuries sustained when the plaintiff, in attempting to leave the theatre when she thought there had been a completion of the show but before house lights were turned on, misjudged the height of a step, of the existence of which she knew, from her seat into the aisle, and fell, the plaintiff testified that the lights were dim and that she could see people moving in the darkness; and the defendant's manager, called by the plaintiff as a witness, described the lighting of the theatre and stated that at the time of the accident the amount of light was that ordinarily used in the picture house when moving pictures were shown and was the usual motion picture theatre lighting; that there must be a condition of semi-darkness to enable a person to see the pictures satisfactorily; and that, when the plaintiff was helped up after her fall, the house lights were on. The judge denied a motion that a verdict be ordered for the defendant. There was a verdict for the plaintiff. The defendant alleged exceptions. *Held*, that

(1) The evidence did not justify a finding that at the time of the accident the theatre and the aisles were darker than was reasonably necessary for a proper showing of the moving picture;

(2) While the defendant had a duty to turn on the house lights for the convenience of its patrons within a reasonable time after the show was over, the testimony of the plaintiff as to delay in throwing on these lights would not warrant a finding of negligence even if it be assumed that the showing of the last picture had been completed when she started to leave;

(3) A verdict should have been ordered for the defendant.

TORT for personal injuries. Writ dated May 3, 1929.

In the Superior Court, the action was tried before *W. A. Burns*, J. Material evidence is stated in the opinion. The judge denied a motion that a verdict be ordered for the defendant. There was a verdict for the plaintiff in the sum of $3,500. The defendant alleged exceptions.

*C. H. Wright*, for the defendant.

*E. D. Getman*, (*W. A. O'Hearn* with him,) for the plaintiff.

SANDERSON, J. This is an action of tort for personal injuries sustained in a theatre owned and operated by the defendant. The verdict was for the plaintiff. Exceptions were saved to the refusal by the trial judge to direct a verdict for the defendant and to give certain requests for rulings.

The judge stated to the jury, without objection, that

they could not find any defective construction of the theatre and that the negligence, if any, was in the failure to provide such light as a reasonable, prudent theatre owner, manager or operator would have provided in view of that construction.

The defendant's manager, called as a witness by the plaintiff, testified, in substance, that the theatre is one hundred ten feet long by sixty-five feet in width, having three rows of seats and four aisles separating the rows from each other and from the walls; that an entrance hall leads along the whole length of the theatre on the south side and is connected with a passageway at the rear of the rows of seats, nine feet wide and nine feet high, extending the width of the theatre; that the lights usually kept burning during the showing of a picture are five fifteen to twenty-five watt lamps in the ceiling of this passageway reflecting a very soft colored light, two similar lights in standing lamps in the passageway, and three similar lights on each long wall of the theatre. He also testified that it was the custom to turn on the "house lights" at the conclusion of the show; that at the time of the accident the amount of light was that ordinarily used in the picture house when moving pictures were shown and was the usual motion picture theatre lighting; that there must be a condition of semi-darkness to enable a person to see the pictures satisfactorily; that there were ushers with flash lights to conduct people to their seats; that the elevation of the seats in the theatre begins in the seventeenth row even with the front edge of the balcony, half way back from the stage, and goes up gradually; that in this part of the theatre the elevation at the front of the seat is four inches running back to nothing or the width of a board at the rear of the seat; that if the step up is four inches in front it may be five inches in stepping up from the aisle toward the rear.

The plaintiff testified that when she entered the theatre with her sister a picture was being shown and they found their way to seats in the third or fourth row from the rear, in the northernmost tier of seats, without the aid of an usher; that they remained in the theatre for an hour or an hour and three quarters and at the end of a picture at about five o'clock she waited a second or two for another to come on

and saw people going out and thought the show was over; that she started to go out before the house lights were turned on when everything was dark; that she knew the step was there but could not see it; that she looked right down and stepped carefully, but the depth was greater than she thought, and as she stepped down she was thrown and suffered the injuries complained of; that there were no lights lit under the balcony; that if there were lights in the passageway at the rear they were very dim. In cross-examination she at first said that there was no light in the theatre anywhere, and then said if there were lights over the exits or in the back of the theatre they were very dim; that there were no lights along the north wall of the theatre and she saw none along the south side; that she does not know whether there were any on that side or not; that she could see people moving in the dark; that she did not notice whether the lights on the north side of the theatre were lit or not when she entered, or whether they were then lit on the back or south side; that when she started to leave she did not look to see whether the lights on the north side were out, and did not know whether they were lighted or not; that she looked before she stepped and it was perfectly black; that she knew the step was there but did not realize its depth; that she knew she was stepping off in the dark, but did not realize how far; that she threw her weight forward before her foot was firmly placed on the floor of the aisle; that she had hold of nothing when she fell, and that it was not so dark when she entered the theatre as when she fell because the picture was being shown when she entered.

The testimony of the manager tended to prove that the house lights were on in the theatre when the plaintiff was helped up after her fall. The negligence of the defendant upon which the plaintiff seems to rest her case in her brief is in not furnishing sufficient light in the theatre for the plaintiff to see her way out after the performance was over. The defendant owed to the plaintiff as an invitee the general duty to use ordinary care and diligence to put and keep his theatre in a reasonably safe condition, having

regard to the construction of the place, character of the entertainment given and the customary conduct of persons attending. *Carleton* v. *Franconia Iron & Steel Co.* 99 Mass. 216, 217. *Currier* v. *Boston Music Hall Association,* 135 Mass. 414. *Schofield* v. *Wood,* 170 Mass. 415, 418. *Little* v. *Holyoke,* 177 Mass. 114. *Blanchette* v. *Union Street Railway,* 248 Mass. 407, 412–413. *Cruickshank* v. *Brockton Agricultural Society,* 260 Mass. 283, 284. *Bottcher* v. *Buck,* 265 Mass. 4, 6. *Grogan* v. *O'Keeffe's Inc.* 267 Mass. 189, 192. *Marston* v. *Boston Publishing Co.* 271 Mass. 307. *Hale* v. *McLaughlin,* 274 Mass. 308. *Wilson* v. *Norumbega Park Co.* 275 Mass. 422, 424. The invitation extended to the plaintiff was to make use of the defendant's theatre to see a moving picture exhibition. Uncontradicted evidence was introduced tending to prove that for this kind of exhibition a condition of semi-darkness is required and that the amount of light while the pictures were being shown was that ordinarily used in a motion picture house. See *Lyman* v. *Knickerbocker Theatre Co. of Washington, D. C.* 5 Fed. Rep. (2d) 538. Even if it be assumed that the soft lights on the north wall were out when the plaintiff left her seat it did not appear that this fact could have had a causal connection with her injury, but her testimony concerning these lights as it was finally left would not justify a finding that they were out or that it was any less light when she started out than when she went in except for the additional light reflected from the picture being shown when she entered. While pictures were being shown the defendant violated no duty to the plaintiff if the condition of light was that ordinarily used in exhibiting moving pictures to enable the audience to get a reasonably clear view of the image thrown on the screen.

The evidence would not justify a finding that the theatre and the aisles were then darker than was reasonably necessary for a proper showing of the moving picture. The duty of lighting for an invitee depends to some extent upon the use which the invitee has a right to make of the place. The defendant undoubtedly had a duty to turn on the house lights for the convenience of its patrons within a reasonable time after the show was over. If it be assumed

that the last picture had been shown when the plaintiff started to leave, her testimony as to the delay in throwing on these lights would not warrant a finding of negligence. The question whether the plaintiff might be barred from recovery on other grounds need not be considered. In so far as cases in other jurisdictions, like *Bass* v. *Southern Enterprises Inc.* 32 Ga. App. 399, and *Oakley* v. *Richards,* 275 Mo. 266, are inconsistent with the conclusion here reached we do not follow them. In the opinion of a majority of the court the entry must be

*Exceptions sustained.*
*Judgment for defendant.*