### OLSEN ET AL. *v.* EDGERLY.

[No. 15,954. Filed February 7, 1939.]

*James L. Murray*, and *Frank H. Fairchild*, for appellants.

*Stark & Manifold*, for appellee.

CURTIS, C. J.—The appellee filed her complaint in the trial court against the appellants, who own and operate the Lyric Theatre in the city of Indianapolis, Indiana, for damages for alleged personal injuries sustained by her while a patron of said theatre. We quote the salient allegations of the complaint in so far as they are material to the decision herein, as follows:

"Comes now the plaintiff in the above entitled cause and complains of the defendants and for cause of action alleges: that said defendants are engaged in the operation of a theatre at 135 North Illinois Street, in the city of Indianapolis, State of Indiana, under the name and style of 'Lyric Theatre.'

"The plaintiff further alleges that said defendants operate said theatre for the purpose of making a profit from such business and that they may accomplish such business of making a profit the public, including this plaintiff, are invited to attend said theatre.

"Plaintiff further alleges that on the 9th day of September, 1935, this plaintiff purchased a ticket of the defendants' agent at the ticket window and entered the said theatre and went upstairs in said theatre.

"Plaintiff further alleges that after she arrived upstairs she waited for an usher to show her to a seat, and after waiting for quite a time for an usher to show her to a seat she attempted to find a seat without an usher to light her to a seat.

"Plaintiff further alleges that the upstairs or balcony in said theatre is so constructed that after arriving upstairs you must go up or down a flight of steps to find a seat.

"Plaintiff further alleges that the show was in progress and it was dark in the said theatre and the said defendants carelessly and negligently failed to have the steps lighted so that this plaintiff could see to walk down said steps to a seat without falling and in lieu of lights in said steps failed to furnish an usher to light this plaintiff down said steps to a seat.

"Plaintiff further alleges that because of the carelessness and negligence of the defendants in failing to have the steps properly lighted or to furnish an usher in lieu of said lights to light this plaintiff to her seat, this plaintiff was caused to fall on said steps and injure herself as

follows, to-wit: Her back over her left kidney, left arm bruised, left leg bruised, left ankle sprained, one rib broken, back sprained, skin knocked off her back, and coat and clothing torn, all to the damage of this plaintiff in the sum of Five Hundred ($500.00) Dollars, all of which injury was caused by the carelessness and negligence of the defendants and without any fault or negligence on the part of this plaintiff."

To the complaint the appellants filed a motion to make more specific which was overruled, followed by a demurrer which was likewise overruled. The complaint was then answered in general denial. Upon the issues thus made the cause was submitted to a jury for trial resulting in a verdict for the appellee in the sum of $225.00, upon which judgment was rendered. The appellants seasonably filed a motion for a new trial which was overruled and this appeal was then prayed and perfected. Neither the ruling on the motion to make the complaint more specific nor the ruling on the demurrer are questioned in this court. The motion for a new trial contained several causes or grounds but they are all expressly waived by the appellants except causes 1, 2, and 6. They are respectively as follows: (1st) That the verdict of the jury is not sustained by sufficient evidence; (2nd) That the verdict of the jury is contrary to law; and (6th) That the court erred in refusing to give the appellants' requested peremptory instruction at the close of all of the evidence to return a verdict for the appellants.

The appellants defended the action upon the grounds that the aisle and theatre were reasonably lighted at the time and place where the appellee fell and that any injures occasioned by the fall were the result of the contributory negligence of the appellee. The jury, by its verdict, found against the appellants upon both defenses. Upon the first ground of defense there was a complete conflict of evidence, the appellee's evi-

dence tending to prove that there was no lighting by which she could see the steps where she was moving and the appellants' evidence tending to show that the lighting was reasonably sufficient. The jury believed the evidence produced by the appellee and since this court cannot weigh conflicting evidence we are bound by the verdict of the jury wherein it concluded that the appellants were negligent in respect to the lighting at the place of the injury.

As throwing light upon the question of the claimed contributory negligence of the appellee we summarize the evidence produced by her. She, herself, testified in substance that on September 9th, 1935, she, in company with another lady, purchased tickets and went into the Lyric Theatre between three and four o'clock in the afternoon; that they went to the balcony because they liked it there and sat in a row of seats which is in a division between the upper and lower balcony; that there was an orchestra on the stage; that they sat there about ten or fifteen minutes and kept talking about an usher not coming and none came; that these seats were near the runway between the upper and lower balcony; that she had been to that theatre every week for almost fifteen years; that she had always been taken to a seat before by an usher with a flashlight; that there was a light showing on the orchestra from the upper balcony through the center of the theatre and that she looked through that light and saw some other seats; that they started down the steps of the aisle toward the other seats; that there was no light and it was so dark that she could not see the steps at all. We now quote from her evidence upon cross-examination as follows: "Q. Could you see the step on which you were standing? A. I couldn't see anything and I thought I had been there often enough I thought I knew it and I guess I didn't. It was so dark I couldn't see anything. Q. Did

you see the first two or three steps? A. No. Q. And you voluntarily continued on down the steps without the aid of an usher? A. There wasn't anyone there at all. Q. You voluntarily continued on down the steps that you couldn't see without the aid of an usher or any light? A. Yes." Her evidence upon her direct examination was equally as positive as her cross-examination to the effect that the aisle where she was was totally dark under her feet. She also testified in substance that she had gotten down a few steps when her right foot missed the step and she fell, causing the personal injuries of which complaint is made; that after she fell an usher came with a flashlight and that she told the assistant manager that if they had furnished an usher with a flashlight the accident would not have occurred, to which he replied "I realize that"; that the arrangement of the balcony, the aisle and runway were the same, except for light, on the day of the injury as they had been before that time; that she had become impatient at not seeing any usher and by reason of that fact she attempted to go to the other seats without an usher's aid. Her companion testified that they sat in the first seats about ten minutes and then the appellee saw two seats further down and started down the aisle toward them, at which time the fall occurred; that the first seats they occupied were regular seats for patrons. Her evidence corroborated the evidence of the appellee as to the darkness in the aisle and as to the failure of any usher to seat them. In connection with her evidence as to changing seats we quote from her evidence as follows: "Q. You didn't make any attempt to get an usher? A. There wasn't any in sight. Always before they were standing at the head of the stairs."

From a reading of the complaint which we have previously set out one would conclude that after the appellee and her companion purchased their tickets on the

day in question they proceeded into the balcony of the theatre, which was dark, and that in going to the seats the appellee fell and received her said injuries. The specific allegations to which we refer are the following: "Plaintiff further alleges that after she arrived upstairs she waited for an usher to show her to a seat, and after waiting for quite a time for an usher to show her to a seat attempted to find a seat without an usher to light her to a seat.

"Plaintiff further alleges that the upstairs or balcony in said theatre is so constructed that after arriving upstairs you must go up or down a flight of steps to find a seat.

"Plaintiff further alleges that the show was in progress and it was dark in the said theatre and the said defendants carelessly and negligently failed to have the steps lighted so that this plaintiff could see to walk down said steps to a seat without falling and in lieu of lights in said steps failed to furnish an usher to light this plaintiff down said steps to a seat.

"Plaintiff further alleges that because of the carelessness and negligence of the defendants in failing to have the steps properly lighted or to furnish an usher in lieu of said lights to light this plaintiff to her seat, this plaintiff was caused to fall on said steps and injure herself . . ." The facts proven at the trial by the undisputed evidence are materially different from the allegations of the complaint. There is no conflict whatever in the evidence to the effect that the appellee and her companion, after purchasing their tickets went to the balcony of the theatre and took seats which were the regular seats for patrons of the theatre and sat in those seats for ten to fifteen minutes. There is no dispute in the evidence that up to that time there was no injury although there is the allegation in the complaint that the theatre was dark in the balcony and

that no usher assisted them in finding seats. Under the undisputed evidence the injury occurred when the appellee, after having been seated ten to fifteen minutes, voluntarily concluded to change her seat to seats farther in front. In attempting to go to the new seats she fell and received her injuries. While there is thus a variance between the pleadings and the proof yet we believe that this is not ground for reversal in view of section 2-3231 (725) Burns 1933 (§505 Baldwin's 1934) which provides that: "No judgment shall be stayed or reversed, in whole or in part, by the Supreme Court, for any defect in form, variance or imperfection contained in the record, pleadings, process, entries, returns, or other proceedings therein, which, by law, might be amended by the court below, *but such defects shall be deemed to be amended in the Supreme Court, . . .*" In this connection it is noted that there was no objection made to the evidence at the trial and the appellants do not make any claim that they were in any manner misled. See: *Hawkins et al.* v. *Thompson* (1919), 69 Ind. App. 605, 122 N. E. 431.

In a vast majority of the cases the question of contributory negligence on the part of the plaintiff is a question of fact for the jury and the cases are rare which require the court to decide such question as a matter of law but there is no doubt that such cases have arisen and will continue to arise. See: *Cleveland, etc., R. Co.* v. *Baker* (1921), 190 Ind. 633, 128 N. E. 836.

But where all of the facts bearing upon the question of contributory negligence are undisputed and where they give rise to a single inference or conclusion, concerning which all reasonable minds would agree, then the question becomes one of law. The question in the instant case is: Would a reasonably prudent and careful person have attempted to go to the

other seats from those they were safely occupying in an aisle that according to the appellee's own evidence was so dark that she could not see even the step under her feet in the unlighted stairway which they must descend in going to the new seats and in view of the other facts and conditions outlined in the evidence as stated herein? We think the answer is in the negative. There was no allegation or proof that the first seats occupied by the appellee and her friend were in any way obscured or that they could not readily see the show from them, or that at the place of the accident the steps or the stairway or the carpet or anything else was in any way unusual or that there was any negligence whatever in their construction or condition except the darkness and the further fact that no usher was at hand to assist them in going to other seats. There was no hidden pitfall or other danger of any like kind either alleged or proven.

As a matter of common knowledge this court knows that a moving picture theatre necessarily operates in partial darkness due to the fact that a flood of ██ light would dim or obscure the picture. This would not, however, excuse the proprietor or operator or owner from the duty to use ordinary and reasonable care to keep the premises in a reasonably safe condition for its patrons, and this would require that the aisles, stairways and other places used by the patrons be kept reasonably lighted taking into consideration the purpose for which the theatre was used and having due regard for the safety of the patrons. As heretofore pointed out, the verdict of the jury was a finding that the appellants were negligent in these regards. We are bound thereby for the reason that upon that question the evidence was conflicting. But under our law the negligence of the defendant is not sufficient

to sustain the verdict where the plaintiff is guilty of contributory negligence.

Upon the question of the contributory negligence of the appellee (plaintiff) the evidence is undisputed and in our opinion gives rise to the single inference or conclusion that she was thus guilty.

If the accident had occurred in the necessary act of entering or leaving the theatre or in any other reasonably necessary change of location while in the theatre a different question would be presented; a question which we need not and do not decide herein. As before pointed out the appellee had safely entered the theatre and was seated in a regular unobstructed seat for patrons where she remained for ten to fifteen minutes and then seeing seats which she thought were more desirable and becoming impatient because no usher was in sight, she attempted to go to the other seats in an aisle and stairway which she said was completely dark, without the aid of an usher and a light. In so doing she met with an injury. The appellee in effect admits that the case of *Perry* v. *Loew's Boston Theatres Co.* (1935), 291 Mass. 332, 197 N. E. 54, is "on all fours" with the instant case. In that case the plaintiff and her son entered the balcony of the theatre by an aisle that ran across the balcony and found seats. The plaintiff then sent her son to an usher who was standing some distance away asking him to show them to seats further in front. The son did as instructed but the usher answered, "Find your own seats." There was a vaudeville show on the stage at that moment. The plaintiff saw two vacant seats down in front and started down the steps but owing to the darkness she lost her footing on the stairs and fell. There was a trial by jury resulting in a substantial verdict for the plaintiff. The trial judge sustained the motion of the defendant for judgment in its favor *non obstante vere dicto*. The appeal was from the

judgment entered upon said motion. The Supreme Court of Massachusetts in affirming the judgment for the defendant said (p. 334) : "Even if defendant failed in its duty by the refusal of the usher to show the plaintiff to a seat in front, that failure did not cause the fall. After that, the plaintiff, knowing that to reach the seats she desired, she must go downstairs in a condition as to darkness that was apparent to her, undertook to reach the desired seats without aid. It is of course difficult to measure light by testimony and to determine whether the actual condition was such as to warrant a finding of negligence. See: *Rosston* v. *Sullivan*, 278 Mass. 31, 179 N. E. 173. *But if it was negligent of the defendant to have no more light on the stairs, it must have been negligent of the plaintiff voluntarily to descend them without more light.*" (Our italics.)

The appellee relies mainly upon the case of *Central Amusement Co. (Lyric Theatre, Indianapolis)* v. *Van Nostran* (1926), 85 Ind. App. 476, 152 N. E. 183, 153 N. E. 390. That case is readily distinguishable from the instant case. The basis for the opinion in that case was an unguarded "step off." We quote as follows (p. 478) : "It is undisputed that there was a 'step off' at the place where appellee fell, and that the last two rows of seats were on a platform back of the 'step off.' The aisle slanted up to where the platform was, which was three or four inches above the slanting floor. The ushers had gone home, and there was no one to warn of danger. Appellee and her companion occupied seats in the second row from the rear, which would be the front row on the platform. A marble barrier back of the seat threw the last two rows in a shadow. During vaudeville performances, the lights were turned out and there was no warning of the presence of danger. Appellee never sat in that part of the theatre before, and did not notice the 'step off' as she went in. Appellee started to leave the theatre during

the time of a performance, and because of the darkness and the want of warning of danger, she fell as she stepped from the platform into the aisle, and was injured. With such evidence before it, it was for the jury to say whether appellee's injuries were the result of appellant's negligence, and whether she was guilty of contributory negligence." An examination of the record in the above case including such instructions as are set out clearly indicates that the negligence relied upon was faulty and negligent construction of the theatre at the place where the accident occurred and failure properly to guard or light the same. We have examined all of the cases cited by the appellee and find that in practically all if not all of those that are well reasoned there was some hidden danger or defect in the construction of the theatre or its immediate environs by reason of which the complaining party was injured.

Inasmuch as the *Perry* v. *Loew's Boston Theatre Co.* case, *supra,* is a case squarely in point in the instant case and is clearly in line with the very great weight of authority in this country and has our approval, we deem it unnecessary to lengthen this opinion by citing and reviewing the other decisions.

The judgment of the trial court is reversed with instructions to sustain the motion for a new trial.