JENNIE C. MELLO *vs.* NEW ENGLAND THEATRES, INC.

Bristol.    October 25, 1943. — December 3, 1943.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Negligence*, Theatre, Contributory.

The questions of negligence of the proprietor of a theatre toward a woman patron and of her contributory negligence were for the jury where there was evidence that, after an usher had directed her to descend a stairway in the darkened theatre pursuant to a rule of the proprietor and was using a flashlight to guide her as she descended, he suddenly turned away the beam of the flashlight when she had one foot poised "in mid air" and she missed her footing in attempting to complete that step and fell.

TORT.    Writ in the Third District Court of Bristol dated June 20, 1941.

Upon removal to the Superior Court, the action was tried before *Walsh*, J.

*H. A. Lider*, for the plaintiff.

*G. P. Walsh*, for the defendant.

DOLAN, J.    This is an action of tort to recover compensation for personal injuries alleged to have been sustained by the plaintiff as a result of falling on a stairway in a motion picture theatre controlled and conducted by the defendant.  The declaration is in two counts, the first alleging that the plaintiff was descending the stairs at the direction of an usher who was employed by the defendant and who was negligent in turning the beam of his flashlight away from the stairs, causing her to fall, and the second alleging that she was caused to fall by reason of the failure of an usher or other employee of the defendant to assist her properly and by reason of the unsafe and dangerous condition

of the stairway, and that by reason of the negligence "as aforesaid" she suffered personal injuries.  The case was tried to a jury, and at the conclusion of the evidence the judge directed a verdict for the defendant on each count of the declaration and reported his action to this court with the stipulation, agreed to by counsel, that, if his ruling was correct, the verdict was to stand; otherwise a verdict was to be entered for the plaintiff in a stated amount.

The evidence most favorable to the plaintiff would have warranted the jury in finding the following facts: On March 18, 1941, at about 4:30 P.M., the plaintiff, together with her husband and brother, having purchased tickets of admission, entered the defendant's theatre and took seats in the front row of the second balcony.  Shortly after they were seated, an usher, employed by the defendant, who was standing at the rear of the first balcony, informed them that no adults were allowed in the second balcony and told them "to come down to the first balcony."  There was a "rule or regulation of the theatre" excluding adults from the second balcony, and the "ushers were instructed to notify adult patrons" of this rule.  There "was one usher on duty in the balcony at the time of the accident."  Following the directions of the usher, the plaintiff and her husband and brother proceeded to go down the staircase from the second to the first balcony in single file, the plaintiff's husband preceding her and the plaintiff's brother "bringing up the rear."  As they "started down, the usher, standing in the first balcony, projected the beam from a flashlight, which he held . . . , on the steps which they were descending."  When the plaintiff's husband reached the bottom of the steps, the usher "turned away and showed no more light on the steps."  At that time the plaintiff was about two steps from the bottom, her left foot was in mid air and the steps became dark.  As the plaintiff put her foot down "it just touched the edge of the next step and turned over causing her to fall in a sitting position and sustain a sprained ankle necessitating medical attention and causing her to be incapacitated for work."  The steps were all of the same width.  The plaintiff misjudged "the width of the

step and thus turned her ankle . . . if she had taken that step in the same fashion that she had taken the preceding ones there would not have been any accident." The theatre was in semidarkness when the plaintiff entered, and she "knew . . . that this semidarkness was customary and necessary in order to properly show the pictures."

The plaintiff does not rely on any proposition that the theatre in general was inadequately lighted (see *Rosston* v. *Sullivan,* 278 Mass. 31) or that the defendant was under an obligation to provide the usher with a flashlight (see *Rynn* v. *Fox–New England Theatres, Inc.* 299 Mass. 258), but contends that in the circumstances of the case the defendant failed to use reasonable care for her safety, that the jury could have found properly that she was in the exercise of due care acting under the directions of the usher, that his negligence in suddenly withdrawing the light from the path in which she was descending was the cause of the personal injuries sustained by her, and that the case should have been submitted to the jury.

The facts in the present case are much like those in *Weiner* v. *Egleston Amusement Co.* 293 Mass. 83, 86. In that case the plaintiff entered the theatre involved while a moving picture was being shown and the theatre was darkened as was customary during such performances. As the plaintiff was descending the stairs from the balcony, an usher preceded her, throwing a light in front of her from the flashlight he was carrying. He turned the flashlight away leaving it "very dark," and the plaintiff fell and sustained personal injuries. The case was tried before a judge of a District Court who denied certain requests of the plaintiff for rulings, finding that the plaintiff was negligent and that the defendant was not negligent. Upon report to the Appellate Division of the District Court it was ordered that the report be dismissed. Upon appeal from that order, while it was affirmed by this court, it was held that whether "the plaintiff was in the exercise of due care and the defendant was negligent presented questions of fact to be determined by the trial judge"; that therefore his finding of fact that the defendant was not negligent would not be

set aside if it could be supported on any reasonable view of the evidence, with all rational inferences of which it was susceptible; that this "finding upon the evidence presented was not erroneous as matter of law"; that the burden of proving negligence of the defendant rested upon the plaintiff, and that the "trial judge might have discredited all the testimony tending to support the plaintiff's contention."

In the instant case we are of opinion that upon the evidence the same questions of fact were presented for determination by the jury. Since the defendant had undertaken by its usher to light the path of the plaintiff as she was descending the stairs, at the direction of the usher, who could be found to have been acting under the instructions of the defendant in requiring the plaintiff to leave the place where she was safely seated and to descend the stairs, the defendant owed to the plaintiff a duty to exercise reasonable care for her safety. The case is not one where a patron enters a theatre in a state of semidarkness and "half way down an aisle" is preceded by an usher without the aid of a flashlight, and is injured while walking in a row in front of other persons seated there. That was the case in *Rynn v. Fox–New England Theatres, Inc.* 299 Mass. 258, relied upon by the defendant. *Perry v. Loew's Boston Theatres Co.* 291 Mass. 332, is distinguishable on the facts. In that case, although the usher had been instructed to use flashlights "to light the way of patrons down stairs," the usher did not do so and the plaintiff, who had taken a seat in the balcony, upon the refusal of an usher to find other seats for herself and her son, started down the stairs, but, owing to the darkness, lost her footing on the stairs and fell. And it was held that, if it was negligent for the defendant to have no more light on the stairs, it must have been negligent for the plaintiff "voluntarily" to descend them without more light. In the instant case the jury could have found that the plaintiff was descending the stairs at the command of the usher acting under the rules of the defendant, and that when the usher withdrew the light from the path in which the plaintiff was descending the stairs became dark. They could take notice properly of the common effect upon the

vision of one walking by the aid of artificial light in a dark or semidark place, when the light is suddenly withdrawn, and of the fact that in such case it takes time for the sight to become adjusted. See *Lyric Amusement Co.* v. *Jeffries,* 58 Ariz. 381, 386. They were not bound to believe the testimony of the plaintiff's brother who was following her down the stairs that, "although the theatre was partly dark, he was able to see enough of the stairway to enable him to go down from step to step." His testimony was not binding on the plaintiff. The jury could also have found that the plaintiff was not negligent in failing to remain where she was when the light was withdrawn, that at that time she was so poised in the act of descending the stairs with "her left foot . . . in mid air" that her action in attempting to place her left foot on the next lower step was a natural, if not an involuntary, one, and that her misjudgment of the width of that step was due to the negligence of the defendant's usher in withdrawing the light from her path. In *Corcoran* v. *United Markets, Inc.* 314 Mass. 26, 27–28, it was recognized that, in "descending steps, the body is more out of balance than in walking on a smooth floor."

Since we are of opinion that the action of the judge in directing a verdict for the defendant was erroneous, judgment is to be entered for the plaintiff in accordance with the stipulation set forth in the report.

*So ordered.*