JOHN ROY *vs.* TOWN OF OXFORD.

Worcester. September 26, 1944. — October 25, 1944.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Negligence*, Contributory, Theatre. *Evidence*, Relevancy and materiality.

Evidence that the seating arrangements in a hall used for showing motion pictures were changed after a patron had fallen at a place where there was a difference in levels between two aisles would not justify an inference that a defective condition for which the proprietor of the hall was responsible had existed when the patron fell.

A finding of contributory negligence on the part of one attending a showing of motion pictures in a hall was required by evidence that he voluntarily proceeded alone down the center aisle of a dimly lighted balcony, feeling his way with his feet, and slipped and fell in attempting to turn into a cross aisle at a place where there was a difference in levels.

TORT. Writ in the Superior Court dated January 23, 1942.

The action was tried before *Donnelly*, J.

*N. A. Racicot*, for the plaintiff.

*P. R. O'Connell*, for the defendant.

DOLAN, J. This is an action of tort to recover compensation for personal injuries sustained by the plaintiff as a result of falling in the balcony of the town hall of the defendant. The case comes before us on the plaintiff's exception to the action of the judge in allowing the defendant's motion for a directed verdict in its favor.

The evidence most favorable to the plaintiff would have warranted the jury in finding the following facts: On October 18, 1941, at about 7:30 P.M., the plaintiff entered the town hall to attend a showing of motion pictures presented by one Dupuis, who had been granted the use of the hall on Saturdays and Sundays for the purpose of conducting exhibitions of motion pictures in consideration of a weekly rental and a weekly fee for the use of the defendant's projector. "The town furnished and paid for the heat, the

lights, and the janitor." Dupuis made a charge for admission. The janitor of the hall was in charge of the lights.

Entering the hall before the "show" began, and at the time above mentioned, the plaintiff proceeded by a stairway to the balcony where he became "seated in the front row of the balcony in the third seat from the left side aisle." After the "show" began the house lights were extinguished, and the only lights on the balcony were those over two exits at the stairways leading from the balcony to the second floor. A red light at the rear of the balcony was not lighted at the time of the accident, but the exit signs were lighted. About an hour after the showing of the picture began, and while it was in progress, the plaintiff got up to go to the toilet (which was in the basement) and proceeded up the left aisle. No usher was present. There were no steps in that aisle as distinguished from the tiers between the seats which were about thirty inches wide and eleven and one half inches high. The plaintiff knew that it was dark, but going up the left aisle he "knew when . . . [he] came to a step as . . . [he could] feel it." The plaintiff ascended this aisle and proceeded to walk across the rear aisle to the center aisle. In the center aisle, between the rows of seats, there were steps about six feet long with treads eleven and one half inches wide and risers of five and three quarters inches. To the right of the second step going down there were no seats in the aisle leading to the exit on the right side of the balcony facing the stage. When the plaintiff reached the steps in the center aisle he took one step down and turned to go to the exit on the right. He "thought . . . [he] was then on the floor," but in fact he was still on the step from which it was necessary to descend to the cross aisle. He slipped, fell and was injured. The seating arrangement at the time of the accident was the same as it had been for years before, but was changed thereafter.

The action of the judge in allowing the defendant's motion for a directed verdict was free from error. There was no evidence that would have warranted the jury in finding that the step upon which the plaintiff slipped was defective or that the step was other than that which would

have been obvious to one using it when the pictures were not being shown and the main balcony was lighted. The evidence that changes were made in the seating arrangement after the accident would not justify the inference that a defective condition for which the defendant was responsible had existed before that time. *Morrow* v. *Otis*, 251 Mass. 65, 68. *Manchester* v. *Attleboro*, 288 Mass. 492, 493, and cases cited. *National Laundry Co.* v. *Newton*, 300 Mass. 126, 127. On all the evidence the jury would have been obliged to find that the plaintiff, knowing that the balcony was but dimly lighted, proceeded down the stairs of the center aisle voluntarily, feeling his way with his feet. If "it was negligent of the defendant to have no more light on the stairs, it must have been negligent of the plaintiff voluntarily to descend them without more light." *Perry* v. *Loew's Boston Theatres Co.* 291 Mass. 332, 334, and cases cited. *Burke* v. *Crimmins*, 256 Mass. 14, 16. *Rynn* v. *Fox-New England Theatres, Inc.* 299 Mass. 258, 260. The case is distinguishable on the facts from such cases as *Weiner* v. *Egleston Amusement Co.* 293 Mass. 83, and *Mello* v. *New England Theatres, Inc.* 315 Mass. 171.

*Exceptions overruled.*