361 So.2d 1227 (1978)
Joan D. McLAUGHLIN, Plaintiff-Appellant,
v.
HOME INDEMNITY INSURANCE COMPANY et al., Defendants-Appellees.
No. 12030.
Court of Appeal of Louisiana, First Circuit.
July 10, 1978.
Rehearing Denied August 31, 1978.
Writ Refused October 20, 1978.
*1228 Andrew J. Bennett, Jr., Baton Rouge, of counsel for plaintiff-appellant Joan D. McLaughlin.
City Parish Atty. Joseph F. Keogh, and J. Reginald Keogh, Baton Rouge, of counsel for defendant-appellee White House Inn, of Baton Rouge Inc. and Home Indemnity Ins. Co.
Diana Simon, Lafayette, of counsel for defendant-appellee Beaver Productions, Inc.
Before LANDRY, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
Plaintiff, Joan McLaughlin, in this slip and fall case appeals from an adverse judgment of the district court. We reverse.
Ms. McLaughlin was injured at a rock concert in Independence Hall in Baton Rouge on May 30, 1974, when she slipped in a wet substance while descending a stairway. She brought this action against the owner-operator of the hall, White House Inn of Baton Rouge, Inc., its liability insurer, Home Indemnity Insurance Company, and the promoter of the concert, Beaver Productions, Inc.
The basic undisputed facts are: Independence Hall is arranged in a series of platforms which descend from the front entrance of the building to the main floor. Each of the two aisles contain three steps between the platforms. The concession stand, at which beer and soft drinks were being sold, is located on the main floor. The rest rooms are reached from the main floor. At this concert all tickets were general admission. Festival seating was in effect *1229 on the main floor, that is, no chairs were provided, the audience sat on the floor. Chairs were, however, provided for those who wished to sit on the platforms.
Ms. McLaughlin arrived with a friend, Betty Saffard, and her brother, Sean McLaughlin, prior to the commencement of the concert. They proceeded down the right aisle to the main floor desiring to purchase refreshments at the concession stand. They found the concession stand very crowded and decided against attempting to make purchases at that time. They also attempted to reach the rest rooms but likewise found them overly crowded. Thereupon, they went back up the aisle and secured seats. During, this period of time the main lights in the hall were functioning.
After the first band to play had stopped after approximately forty-five minutes, there was an intermission. The main lights were not turned on. Immediately after the band ceased playing plaintiff went down the aisle in an attempt to go to the rest room. Other people were rising and going down the aisle at this time. The only lights on at this time were the small lights on the steps, exit lights, and a light shining on the stage.
Because of the darkness plaintiff proceeded very slowly down the aisle. She stepped into something wet and slippery and fell onto the platform. As she attempted to right herself and proceed she slipped again. On this latter occasion she sustained the injury for which she now seeks to recover. A policeman came to her aid and she was taken to a nearby hospital.
The defendants as well as the plaintiff were aware that drinks were being consumed in the audience, that they were being placed on the floor, and that they were being spilled. Employees of White House Inn were assigned to mop up any spills reported to them but no one was assigned to inspect the stairs for spills or debris. The lighting panel was operated by an employee of White House Inn; however, he was working under the directions of Beaver Productions.
Based upon these facts the trial judge, for oral reasons assigned which are included in the record, held that plaintiff had failed to prove any breach of duty owed to her by the defendants. He stated that at a rock concert a proprietor cannot be held to the same duty as that imposed upon the owner-operator of a food or department store. In the latter situation, he reasoned that a patron can anticipate a clear aisle or a floor free of foreign matter, that the duty there owed is to avoid the unexpected by eliminating any hazard which could or should be detected by reasonable inspection and cleanup procedures. Whereas, at a concert such as the one here conducted, the patron is not unlike a participant, that beverages are consumed and left at or near where they are consumed, that crowds get "a little out of hand" and darkness prevails because that is the way the patrons like it. He therefore concluded that he was "unable to find any particular thing that these defendants allowed to occur that created any hazard that was a surprise to or unknown to the plaintiff."
We agree with the trial judge that the instant situation is not the same as the typical slip and fall case which generally arises out of an incident which occurs in a mercantile establishment. The question of reasonable inspection and cleanup procedure was the subject of a considerable portion of the testimony adduced during the course of the trial. Defendants had on hand some fourteen policemen, four firemen, and three "housemen." We think it unreasonable to expect that these people would patrol the aisles with flashlights or otherwise engage in a routine inspection procedure during the course of the performance to the obvious displeasure and distraction of the patrons. Such would not be in keeping with the mood of the concert.[1] This, however, does not totally eliminate any duty on the part of the defendants.
In Guilbeau v. Liberty Mutual Insurance Co., 338 So.2d 600, 602 (La.1976), the court stated:

*1230 "Actionable negligence results from the creation or maintenance of an unreasonable risk of injury to others. Smolinski v. Taulli, La., 276 So.2d 286 and authorities there cited. In determining whether the risk is unreasonable, not only the seriousness of the harm that may be caused is relevant, Allien v. Louisiana Power & Light Co., 202 So.2d 704 (La. App.3d Cir. 1967), certiorari denied, 251 La. 392, 204 So.2d 574 (1967), but also the likelihood that harm may be caused, Goff v. Carlino, 181 So.2d 426 (La.App.1965), certiorari denied, 248 La. 1033, 183 So.2d 653 (1966). See also: Restatement of Torts, Second, Sections 291-293 (1965)."
In applying the above rules to the facts in the instant case and particularly as they relate to the question of breach of duty, we find that the risk created by defendants' failure to turn the lights on during the intermission was unreasonable. It is during this period of time that patrons are expected to move about either for the purpose of obtaining refreshments or to go to the rest rooms. The danger of someone slipping or falling is the prime risk to be guarded against. Precaution against such a risk is minimal to say the least, just simply turn the lights on.
On the question of contributory negligence we find that plaintiff acted reasonably. Her unrebutted testimony is that she was proceeding very slowly down the steps, feeling her way along. This being the only route available to her, we find no negligence on her part. Revon v. American Guaranty & Liability Insurance Company, 285 So.2d 354 (La.App. 4th Cir. 1973), amended on other grounds 296 So.2d 257 (La.1974); Perkins v. Springhill General Hospital, 278 So.2d 900 (La.App.2d Cir. 1973).
Lastly, defendants contend that plaintiff assumed the risk of falling when she elected to descend the stairs. In order for her to have assumed the risk, plaintiff must have knowingly and voluntarily encountered the risk which caused her injury. Prestenbach v. Sentry Insurance Co., 340 So.2d 1331 (La.1976). A subjective test is applied. Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971). We find that Ms. McLaughlin did not knowingly and voluntarily encounter the risk which caused her to fall. While she did admit to knowledge of the fact that fellow patrons did spill their drinks, a closer review of the record satisfies us that this is an admission too general in nature to place her on notice of spilled drinks in the aisles and on the steps. She was proceeding in a very cautious manner not because of the possibility of liquid on the steps but because of the darkness.
As a result of her fall, plaintiff sustained a fracture of her right forearm just above the wrist. The injury was medically described as a fracture of the distal radius, with some non-displaced comminuted lines. The short cast initially applied had to be replaced with a long arm cast. The wrist remained immobile for some six weeks. Her recovery was very routine. The attending orthopedic specialist termed plaintiff's recovery as "pretty good." No residual impairment is anticipated.
For this injury, we think an award of $4,000.00 is appropriate. The sum of $227.40 for medical expenses is not disputed.
Accordingly, for the above reasons, the judgment of the district court is reversed and judgment is rendered herein in favor of plaintiff, Joan D. McLaughlin, and against the defendants, White House Inn of Baton Rouge, Inc., Beaver Productions, Inc., and Home Indemnity Insurance Company, in solido, in the full amount of $4227.40, together with legal interest thereon from date of judicial demand until paid, and for all costs of these proceedings, including the expert witness fee of Dr. Kenneth C. Cranor as set by the trial judge.
REVERSED AND RENDERED.
NOTES
[1] There is no evidence that those in attendance were in any way unruly.