HELEN UPHAM vs. CHATEAU DE VILLE DINNER
THEATRE, INC.

Norfolk. December 13, 1979. — April 9, 1980.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & ABRAMS, JJ.

*Negligence,* Theatre, One owning or controlling real estate.

In a tort action brought by the plaintiff to recover for personal injuries
sustained when she tripped and fell because of the semi-dark lighting
conditions in a dinner theatre, the judge erred in granting the defend-
ant's motion for a directed verdict on the ground that the lighting con-
ditions were those customarily found in a dinner theatre; the defend-
ant had a duty to exercise reasonable care in all the circumstances, and
adherence to the trade standard for lighting was not conclusive proof
of lack of negligence. [352]

CIVIL ACTION commenced in the Superior Court on Janu-
ary 6, 1978.

The case was heard by *Sullivan,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Gerald F. Williamson* for the plaintiff.

*John D. Dwyer* for the defendant.

ABRAMS, J. This is an action in tort brought by the plain-
tiff to recover for personal injuries sustained when she tripped
and fell while descending some steps in a dinner theatre
owned and controlled by the defendant, Chateau de Ville
Dinner Theatre, Inc. In her opening statement the plaintiff
claimed that the defendant failed in its duty to exercise rea-
sonable care to prevent injury to the theatre's patrons. After
the plaintiff's opening, the defendant moved for a directed
verdict. Relying on four of our cases,[1] the defendant argued

---

[1] The defendant relied on *Rosston* v. *Sullivan,* 278 Mass. 31 (1931); *Per-
ry* v. *Loew's Boston Theatres Co.,* 291 Mass. 332 (1935); *Rynn* v. *Fox-*

that even if the facts outlined in the plaintiff's opening were true, the plaintiff's claim was essentially that she fell because of the semi-dark lighting conditions, and that the lighting conditions here involved were those customarily found in a dinner theatre. Therefore, the defendant claimed that it did not violate any duty of reasonable care as matter of law. After a brief colloquy at the bench, the judge granted the motion.[2] The plaintiff appealed, and we transferred the case to this court on our own motion.[3] We reverse the judgment and remand for a new trial.

The pertinent facts, as stated in the opening, are as follows. The plaintiff was a member of a group of forty-one elderly persons who reserved seats five weeks in advance for dinner and the performance on the evening of December 8, 1977. The entire group was seated on a tiered platform above the main floor, reached by ascending a series of carpeted steps. The plaintiff had never been to this dinner theatre before and was unfamiliar with her surroundings. After being seated at the beginning of the evening, the plaintiff remained at her table until the curtain calls began, when she decided to leave. She slipped on the steps leading to the main floor and broke her shoulder. As a result of the fall the plaintiff is now partially disabled and unable to perform many of her usual activities.

General lighting in the theatre is provided by a large, rheostat-controlled, fifteen foot chandelier which is turned off

---

*New England Theatres, Inc.*, 299 Mass. 258 (1938); *Roy* v. *Oxford,* 317 Mass. 174 (1944).

[2] "While the practice of ordering a verdict on an opening that fails to state a case is a well recognized part of our law . . . , nevertheless it is a power which, for obvious reasons, should be exercised with great caution." *Carbone* v. *Trustees of N.Y. N.H. & H.R.R.,* 320 Mass. 710, 713-714 (1947) (citations omitted). The trial judge indicated that his actions were dictated by his view of the controlling law, a view shared by the parties. The judge was of the opinion that the opening would more than adequately raise the legal issues, and that an extended trial was, therefore, unwarranted. See *Mounsey* v. *Ellard,* 363 Mass. 693, 694 (1973).

[3] The case was placed on the summary calendar. After arguments we concluded that it would not be appropriate to treat this matter summarily.

during the show. Lighting during the performance is provided by specially designed instruments whose intensity and hue vary depending on the lighting effects sought to be achieved. Performance lighting conditions are maintained during the curtain calls. The stairs leading to the upper platform had small, flush-mounted lights installed in the riser part of each step, which remained on during the show. According to the plaintiff's opening, these riser lights did not aid her vision while descending the steps. No ushers were in attendance and there were no warnings given that descending the steps during the show and the curtain calls might be dangerous.

On appeal the sole issue is whether the judge was correct in granting a directed verdict after the plaintiff's opening statement. Traditionally, a theatre owner owed a patron "the general duty to use ordinary care and diligence to put and keep his theatre in a reasonably safe condition, having regard to the construction of the place, character of the entertainment given and the customary conduct of persons attending." *Rosston* v. *Sullivan*, 278 Mass. 31, 34-35 (1931). See *Silvia* v. *Woodhouse*, 356 Mass. 119, 122 (1969); *Byron* v. *Fresh Pond Open Air Theatre*, 333 Mass. 121, 123 (1955). "While pictures were being shown the defendant violated no duty to the plaintiff if the condition of light was that ordinarily used in exhibiting moving pictures to enable the audience to get a reasonably clear view of the image thrown on the screen." *Rosston* v. *Sullivan, supra* at 35.[4] The plaintiff claims that the *Rosston* case no longer represents the law of this Commonwealth, and that, there-

---

[4] No distinction has been made in our cases between the duty owed the patron of a movie theatre and that owed the patron of a legitimate theatre, where darkness is required to achieve artistic lighting effects. *Perry* v. *Loew's Boston Theatres Co.*, 291 Mass. 332 (1935). See *Scott* v. *Lincoln Center for the Performing Arts, Inc.*, 25 N.Y.2d 999, 1001 (1969) (Burke, J., dissenting) ("Surely the standard of care should be the same for those citizens who ride with the hounds of culture as it is in the case of the clientele of the neighborhood playhouses").

fore, the judge should not have directed a verdict on her opening.[5] We agree.

A landowner or occupier is now charged with a single duty to all lawful visitors, "to take those steps to prevent injury that are reasonable and appropriate under all the circumstances," *Poirier* v. *Plymouth*, 374 Mass. 206, 228 (1978), taking into account the likelihood of injury to others, the seriousness of the injury, and the proper allocation of the risks involved. In recent years, we have expanded the cases in which the reasonableness of a landowner's conduct may be considered by the fact finder. See, e.g., *Young* v. *Garwacki*, ante 162, 167-168 (1980); *Soule* v. *Massachusetts Elec. Co.*, 378 Mass. 177, 182, 184 (1979); *Poirier* v. *Plymouth*, 374 Mass. 206, 221 (1978); *King* v. *G & M Realty Corp.*, 373 Mass. 658 (1977); *Mounsey* v. *Ellard*, 363 Mass. 693, 707 (1973). We see no reason to make theatre owners a distinct class of landowners exempt from the general obligation to conduct their activities with reasonable care in all the circumstances.

Moreover, since our cases have been interpreted to mean that adherence to the trade standard for lighting theatres is conclusive proof of lack of negligence on the part of the theatre owner or manager, we no longer follow them. *Bergstresser* v. *Minnesota Amusement Co.*, 68 S.D. 579, 589 (1942), and cases cited. *Beck* v. *Stanley Co.*, 355 Pa. 608 (1947). See *Constantine* v. *Proven Pictures of Boston, Inc.*, 338 Mass. 463 (1959); *Mello* v. *New England Theatres, Inc.*, 315 Mass. 171 (1943); *Tovey* v. *G.E. Lothrop Theatres Co.*, 288 Mass. 346 (1934).[6] Such cases as *Rosston* place un-

---

[5] The plaintiff brought to the judge's attention the various changes in tort law which would warrant jury consideration of her case. However, she recognized as controlling the cases set forth in note 1, *supra*.

[6] The other cases cited by the judge apply the same rule as found in the *Rosston* case, *Rynn* v. *Fox-New England Theatres, Inc.*, *supra*, or were decided on the basis that the plaintiff was contributorily negligent as matter of law, *Roy* v. *Oxford, supra; Perry* v. *Loew's Boston Theatres Co.*, *supra*.

Contributory negligence as a defense was abolished by St. 1969, c. 761, § 1, which amended G. L. c. 231, § 85, and was effective as to causes of

due emphasis on conformity to standard practices in theatre lighting, and are inconsistent with more recent cases eliminating the conclusive weight to be given evidence of custom or trade practice. See, e.g., *Kushner* v. *Dravo Corp.*, 339 Mass. 273, 277 (1959). Rather than reintroduce arbitrary distinctions similar to those abolished by *Mounsey* v. *Ellard, supra,* we prefer to follow the more general rule that liability is predicated on "reasonable care in all the circumstances." This standard permits the fact finder to consider all relevant factors, including the requirements of the defendant's business.

Our decision to permit jury consideration whether the defendant exercised "reasonable care in all the circumstances" does not make the defendant an insurer. It simply prevents the custom or practice of the trade from being "the sole determinative factor in assessing the occupier's liability." *Mounsey* v. *Ellard, supra* at 708. See *Back* v. *Wickes Corp.*, 375 Mass. 633, 641 (1978).[7] Merely because "lighting and construction were in accord with the customary or standard practice of theaters generally . . . issues of alleged negligence [are not] issues of law for the court rather than issues of fact for the jury. The standard of custom cannot be substituted for the legal standard of reasonable or ordinary care under the circumstances." *LaSell* v. *Tri-States Theatre Corp.*, 233 Iowa 929, 943 (1943).

The theatre owner's need for sufficient darkness to screen a movie or provide artistic lighting effects for a live performance, as well as the need for sufficient light to enable patrons to find or leave their seats safely during a show, are

---

action arising on and after January 1, 1971. Statute 1973, c. 1123, effective January 1, 1974, further amended the comparative negligence statute. There is no dispute about the fact that the plaintiff's case is within St. 1973, c. 1123. Therefore, the defendant's reliance on the *Roy* and *Perry* cases is misplaced.

[7] In *Back* v. *Wickes Corp.*, we approved the following jury instruction: "Evidence as to whether or not a person conformed to a business custom that has grown up in a given industry or location is relevant, and it ought to be considered, but it is not necessarily controlling on the question of whether or not the defendant exercised ordinary care."

relevant factors for a jury to consider in evaluating what constitutes reasonable care. *Drumwright* v. *North Carolina Theatres, Inc.*, 228 N.C. 325, 328 (1947). *Olsen* v. *Edgerly*, 106 Ind. App. 223, 231 (1939). Cf. *Davis* v. *Theatre Amusement Co.*, 351 Ill. App. 517, 520 (1953) (presence of aisle lights permits inference that light is needed for safety of persons); *Schneider* v. *Carnegie Hall Corp.*, 54 App. Div. 2d 897 (N.Y. 1976) (local ordinance governs theatre lighting); *Collins* v. *Ector Theater*, 497 S.W.2d 496 (Tex. Civ. App. 1973) (local ordinance requires aisle lights).[8]

Since the defendant's duty is to act reasonably in the circumstances, we think the facts outlined in the plaintiff's opening are sufficient, if proved, to create a jury question as to the defendant's negligence.[9] Many of the arguments raised by the plaintiff on this appeal address issues more properly treated as factors to be considered by the jury in determining "the fundamental question whether the defendant has acted reasonably in light of all the circumstances in the particular case." *Mounsey* v. *Ellard, supra* at 707. Thus the jury may consider such factors as the plaintiff's age, the lack of ushers, or the lack of warnings to patrons to be careful

---

[8] In *Riddle* v. *Insurance Co. of N. America*, 290 So. 2d 470 (La. App. 1974), cited by the defendant, a dinner theatre patron sued to recover for personal injuries incurred when she fell off the step between her table and the main floor. Her claim was based on improper lighting and failure to warn. The jury returned a verdict for the defendant. On appeal, the court upheld the verdict for the defendant, but without expressing any opinion as to the adequacy of lighting during the performance. The court held that a factual question had been presented as to the defendant's compliance with its duty of reasonable care "to provide a step down that can be safely negotiated." *Id.* at 471. *McLaughlin* v. *Home Indem. Ins. Co.*, 361 So. 2d 1227 (La. App. 1978), also cited by the defendant, is factually inapposite. In that case the theatre patron was injured because the lights were not turned on during intermission. In both cases, the jurors were permitted to consider the reasonableness of the defendant's conduct.

[9] Ordinarily the more appropriate procedure is to deny a motion for directed verdict and later, if warranted, grant a motion for judgment notwithstanding the verdict. Mass. R. Civ. P. 50 (b), 365 Mass. 814 (1974). See *Young* v. *Garwacki*, 379 Mass. 162, 164 n.1 (1980); *Smith* v. *Ariens Co.*, 375 Mass. 620, 627 (1978). See note 2, *supra*.

going to and from their seats, as well as the fact that the defendant had more than five weeks' notice that a group of elderly persons would attend the theatre that evening, as factors bearing on the reasonableness of the defendant's conduct. The jurors may also consider whether or not an obvious, dangerous condition existed. As a general matter, of course, the greater the danger, the higher the precautions needed for a jury to conclude that a defendant's conduct constituted reasonable care. *Brennan* v. *Ocean View Amusement Co.*, 289 Mass. 587, 592 (1935). *Parsons* v. *National Dairy Cattle Congress*, 277 N.W.2d 620 (Iowa 1979). Any claim by a plaintiff that a defendant did not exercise reasonable care also triggers consideration of the plaintiff's negligence. See G. L. c. 231, § 85 (comparative negligence); *Silvia* v. *Woodhouse*, 356 Mass. 119, 123 (1969).

For the foregoing reasons, the judgment of the Superior Court is reversed and a new trial is ordered.

*So ordered.*