Garsh, J.
This is an action for damages sustained as a result of the plaintiff, Maureen Callis (“Callis”), having suffered injuries when she tripped over a telephone outlet box affixed to the floor in premises leased to the defendant, New England Telephone and Telegraph Company (“NET”). At the time the accident occurred, the American Red Cross (“Red Cross”), plaintiffs employer, was using a vacant portion of defendant’s premises, with the defendant’s permission, to conduct a blood drive.
The defendant now moves for summary judgment on the grounds that it is not liable for plaintiffs injuries because the Red Cross had control of the *629 premises and NET was entitled to rely on the American Red Cross’s expertise in evaluating the suitability of the room for a blood drive and because the box in question was open and obvious. Alternatively, NET seeks a partial summary judgment ruling that any damages awarded to the plaintiff in this action must be reduced, pursuant to G.L.c. 231, §85K(2), because the room was being used for charitable purposes when the accident happened. For the following reasons, NETs motion for summary judgment is denied.
BACKGROUND
The following facts are undisputed: Plaintiff was retrieving supplies from the far end of the room used by Red Cross employees when someone rang an alarm bell. As Cailis turned to respond, she tripped over a silver-colored telephone outlet box, approximately four inches wide by four inches high, located on the floor. Cailis had seen similar outlet boxes in other areas of the room, but she had not seen the particular one over which she tripped.
Before the blood drive began, a Red Cross employee evaluated the room for such matters as lighting and the availability of telephones and safety doors. In evaluating the room, that person’s primary concern was donor safety. NET had an employee responsible for coordinating the blood drive. She noticed the outlet boxes on the floor and was concerned that they might be a danger to users of the room. Accordingly, she used chairs and partitions to cover the ones that were in the area where donors would be walking. She did not cover the box on which the plaintiff tripped.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
Negligence
A landowner or occupier owes a duty to use reasonable care to prevent injury to all lawful visitors and “to take those steps to prevent injury that are reasonable and appropriate under all the circumstances,” taking into account the likelihood of injury to others, the seriousness of the injury, and the proper allocation of the risks involved. Upham v. Chateau de Ville Dinner Theatre, Inc., 380 Mass. 350, 353 (1980), quoting Poirier v. Plymouth, 374 Mass. 206, 228 (1978). That includes the occupier’s obligation to use reasonable care to keep the premises in a reasonably safe condition. Mounsey v. Ellard, 363 Mass. 693, 700 (1973). The Red Cross and its employees, such as the plaintiff, were lawful visitors. The defendant invited the Red Cross to use part of its office space for a blood drive. The mere fact that the Red Cross evaluated the premises for its suitability for a blood drive does not absolve the defendant, as a matter of law, from liability for negligence in connection with a preexisting defect in the premises about which it knew or should have known. Where a person is allowed to conduct business on another’s property, but does not acquire exclusive possession of the premises, the licensor has the duty to exercise reasonable care to maintain the premises in a reasonably safe condition for those using it for the purpose for which it has been licensed. Willett v. Pilotte, 329 Mass. 610 (1953).
The defendant argues that the Red Cross had assumed exclusive control of the premises, but the record does not mandate that finding. NET was the lessee. While Red Cross employees were setting up tables and chairs, an employee of NET was walking about the room where the blood drive was to take place covering some, but not all, outlet boxes. There also is evidence that an employee of NET was herself involved in the actual setting up of the chairs and tables in the room. Such facts are admissible to show NET not only retained, but also exercised, control over the premises. Moreover, the outlet box was a condition existing before the Red Cross assumed any alleged control of the premises and the nature of the condition supports an inference that NET either created or had actual knowledge of the condition. That the Red Cross did not itself cover the outlet box in question when setting up the room might be an intervening cause, but it is'not, as a matter of law, a superseding cause relieving the defendant of liability for harm which its negligence may have been a substantial factor in producing. Cf. Romano v. Massachusetts Port Authority, 3 Mass.App. 765 (1975) (even though airport was not in control of lights in parking lot nor the placement of railroad ties in the lot, it is not relieved of duty to warn lawful visitors of dangers existing in the lot where it could have been found to be in control of lot).
Plaintiffs expert has opined that failure to protect the exposed outlet box represented a clear hazard when on a floor surface used for normal walking purposes and that allowing the use of a room with such an unsafe “egress condition” is a violation of the Massachusetts Building Code. Aviolation of the Building Code, while not conclusive on the ultimate issue, is some evidence of a violator’s negligence. LaClair v. Siberline Manufacturing Co., Inc., 379 Mass. 21, 27-28 (1979).
Defendant also contends that, insofar as the plaintiffs claim is based upon negligent failure to warn of any unreasonable dangers, it had no duly to warn of the potential tripping hazard posed by the outlet box because it was a danger obvious to persons of average intelligence.[2] The plaintiff has testified in her deposition that she did not see the outlet box in question and NET’S employee, who inspected the room, did not testify that she saw the outlet box in question, but *630 failed to cover it. Whether it was known or obvious to persons of normal intelligence or whether NET was entitled to assume that the plaintiff had knowledge cannot be resolved on this record.
“Usually ‘the question of negligence is one of fact for the jury. Only when no rational view of the evidence warrants a finding that the defendant was negligent may the issue be taken from the jury.’ ” Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983), quoting Zezuski v. Jenny Mfg. Co., 363 Mass. 324, 327 (1973). Here, drawing all inferences in favor of Callis, there is sufficient evidence from which reasonable jurors could find that NET owed a duty of care to the plaintiff, that it was negligent, and that its negligence caused plaintiffs injury.
Limited liability
NET maintains that it is entitled to limited liability because the alleged tortious conduct occurred in the course of a charitable activity. G.L.c. 231, §85K provides, in part, as follows:
It shall not constitute a defense to any cause of action based on tort brought against a corporation . . . that said corporation ... is or at the time the cause of action arose was a charity; provided, that if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation . . . liability in any such cause of action shall not exceed the sum of twenty thousand dollars . . . Notwithstanding any other provision of this section, the liability of charitable corporations . . . shall not be subject to the limitations set forth in this section if the tort was committed in the course of activities primarily commercial in character . . .
Defendant does not contend that it is a charitable organization. Rather, it argues that, just as a charitable organization which lends a room to a private group for a private function may take advantage of limited liability, Mason v. Southern New England Conference Ass’n, 696 F.2d 135 (1st Cir. 1982), so too should a private business that has loaned a room to a charity to assist that charity to carry out the charity’s charitable purposes. That analogy ignores the undisputed fact in Mason that the Association’s purposes were not “primarily commercial" and the Court’s finding that the Association had acted “in conformity with the Association’s admittedly charitable corporate purposes.” Id. at 140.
The plain words of the statute do not support the proposition advanced by NET. Chapter 231, §85K limits liability only if a tort is committed in the course of an activity carried on to further the charitable purposes of “such corporation.” (Emphasis added.) The phrase “such corporation” refers to the antecedent noun “charity.” Moreover, “charitable purposes” refers to activity within a corporation’s charitable corporate powers. Cf. Reavey v. Guild of St. Agnes, 284 Mass. 300, 301 (1933). NET points to no corporate by-laws outlining its “charitable purposes.” The reference in the second sentence of c. 231, §85K to “charitable corporations” reinforces the point that the only corporations entitled to the protection of the statute are charitable corporations. Nothing in Section 85K supports a reading of the phrase “such corporation” as referring to any corporation — charitable or for-profit— which happens to be carrying out a charitable activity.
Defendant’s strained construction of Section 85Kis also contraiy to the purposes underlying the statute. The common law doctrine of charitable immunity evolved so that funds donated for charitable purposes would not be diminished. McDonald v. Massachusetts General Hospital, 120 Mass. 432 (1876). Chapter 231, 85K was enacted to preserve, albeit in a more limited fashion, the common law doctrine of charitable immunity after the Supreme Judicial Court indicated an intention to abolish it. Colby v. Carney Hospital, 356 Mass. 527, 528 (1969). The statute abrogated the total immunity provided to charitable organizations at common law. It did not replace immunity for charities with limitation of liability for charities and non-charities alike whenever either is engaged in charitable activities. Instead, Section 85K reflects a “legislative determination to confine narrowly the doctrine of charitable immunity.” Mullins v. Pine Manor College, 389 Mass. at 63-64.
Defendant argues that, by not extending the doctrine, private businesses will not grant corporate office space to the Red Cross for blood drives, thereby decreasing the blood supply available to the public. Such policy considerations for the extension of limited lia-bilily to for-profit organizations engaged in charitable activities should be addressed to the Legislature where the various competing interests and ramifications can be assessed. This court “declinéis] to ignore the wishes of the Legislature and expand the doctrine beyond its original boundaries” to encompass for-profit organizations. Id. at 64.
ORDER
It is hereby ORDERED that defendant New England Telephone and Telegraph Company’s motion for summary judgment be DENIED.

None of the cases relied upon by defendant deal with a physical defect in the premises not observed by the plaintiff. E.g., Thorson v. Mandel 402 Mass. 744, 749 (1988) (potential danger of doing backflip on hard wood floor obvious as a matter of law and plaintiff made no claim that auditorium was not in a reasonably safe condition); Young v. Atlantic Richfield Co., 400 Mass. 837, 842 (1987) (owner of filling station has no duty to warn patrons of risks posed by automobiles in the area).